**STATE of Iowa ex rel. Frederick EPPS, a Minor by Helen EPPS, His Mother and Next Friend, Appellant,**

v.

**Freddie EPPS, Appellee.**

No. 90–1407.

Supreme Court of Iowa.

July 17, 1991.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., J. Livingston Dunkle, Asst. Atty. Gen., and Kay Delafield, Asst. Co. Atty., for appellant.

Sara Kersenbrock, Waterloo, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

The State of Iowa has appealed a district court order that increased a noncustodial parent's child support obligation by less than half the amount called for under our guidelines. Our review is de novo. *In re Marriage of Bergfeld*, 465 N.W.2d 865, 868 (Iowa 1991). Because the court's order substantially departs from the guidelines without sufficient reason, we affirm as modified.

Helen and Freddie Epps' marriage was dissolved in 1985. The court placed their only child, Frederick, in Helen's custody. Freddie, then unemployed, was ordered to pay child support of $80 per month.

In October 1989 Helen began receiving ADC and assigned her right to collect child support to the Iowa Department of Human Services. When the department learned that Freddie was regularly employed, it petitioned the court for an increase in support pursuant to Iowa Code chapter 252A (1989).

At a brief court hearing in August 1990, the parties presented financial affidavits and testimony revealing the following facts. Freddie had been employed full-time by the Carnation Company in Waverly, Iowa since 1987, earning $1505 net income per month. He had remarried and lives with his wife, their newborn child, and his wife's thirteen-year-old son by a prior marriage. The living expenses for this family unit total approximately $1664 per month, excluding Freddie's $80 per month child support obligation for Frederick. That obligation is current.

Helen and Frederick live alone. They are supported by a partial ADC grant that supplements Helen's average earnings of $450 net per month as a nurse's aide. She reports monthly expenses of $921. Her budget includes $120 per month for child care, and no provision for a telephone.

The record also reveals that Freddie's employment at Carnation is marked by an annual layoff. The layoff period was nine weeks in 1989. Thus the State asked the court to calculate his average monthly earnings on the basis of $445 per week for forty-three weeks [1] and $188 per week (un-

---

1. We note that the State's figures represent *gross* income. Our guidelines call for a net figure which, in this case, is $348 per week.

employment compensation) for nine weeks. It further sought to accommodate Freddie's circumstances by suggesting that the court use the guideline table for two children and reduce the sum by one-half (32% divided by 2 = 16%), rather than utilizing the higher percentage for only one child (22.2%). Using the guidelines adopted by this court in October 1989, the State sought a monthly award of $217.

Although the court agreed that an increase was in order, it rejected the State's approach and entered an award of only $100 per month. The court gave three reasons for its ruling: (1) Freddie had been conscientious in paying his current obligation; (2) he is now remarried and supporting two more children; and (3) an increase from $80 per month to $217 per month would not be equitable. Upon the State's motion for expanded findings under Iowa Rule of Civil Procedure 179(b), the court simply stated that under all the circumstances, and considering Freddie's "exemplary" record of payment "within his ability," it would be "unfair and improper" to raise the award further. It is from this ruling that the State appeals.

▆ I. We note at the outset that the district court's decision was made without benefit of several recent cases interpreting the guidelines in varying contexts. *See, e.g., In re Marriage of Powell,* 472 N.W.2d 250 (Iowa 1991); *Gilley v. McCarthy,* 469 N.W.2d 666 (Iowa 1991); *In re Marriage of Ladely,* 469 N.W.2d 663 (Iowa 1991); *State ex rel. Dep't of Human Servs. v. Burt,* 469 N.W.2d 669 (Iowa 1991). Particularly pertinent is our determination that the court must begin its calculations by selecting the chart that applies to the number of children "who live in the custodial parent's household and can legally claim both parties as parents." *Gilley,* 469 N.W.2d at 668. Thus it was incorrect for the State to recommend that the court alter the basic calculation by using the chart for two children as its reference point, rather than the table for one. *See id.* at 668.

▆ We have also said that the mere fact that an obligor has other children or stepchildren to support is not sufficient to establish that the guideline amount is inequitable. *Ladely,* 469 N.W.2d at 665. The burden of that expense may be germane, however, on the question of the obligor's financial ability to pay. *See Gilley,* 469 N.W.2d at 668. Such proof may also bear on whether strict application of the guidelines will result in substantial injustice. *See Ladely,* 469 N.W.2d at 663.

▆ On our de novo review we apply the most current guidelines. *Powell,* 472 N.W.2d at 253; *see Ladely,* 469 N.W.2d at 664. When the obligor's monthly income is subject to fluctuation, we recognize the need to average the income over a reasonable period. *Powell,* 472 N.W.2d at 253. Finally, we noted in *Burt* that the guideline income categories and percentages reflect our attempt to "balance the needs of children against the legitimate needs and expenses of the payor parent." *Burt,* 469 N.W.2d at 670. Thus unless special circumstances are revealed by the record, the obligor's reasonable living expenses will furnish no ground for departure from the presumptively correct guideline amount. *Id.* at 670.

II. Applying these rules to the present case, we turn first to the chart for one child. Given a custodial parent with net monthly income of $450, and a noncustodial parent with an average net monthly income of $1106, the guidelines yield a support obligation of $271 for one child. This figure represents 24.5% of Freddie's net income.

To justify a departure from the guidelines, the court must furnish written findings that the scheduled amount would be "unjust or inappropriate" under criteria developed by this court. Iowa Code § 598.-21(4)(a) (1991). The guidelines authorize variation when

(1) Substantial injustice would result to the payor, payee, or child;

(2) Adjustments are necessary to provide for the needs of the child and to do justice between the parties, payor, or

payee under the special circumstances of the case; and

(3) Circumstances contemplated in Iowa Code section 234.39 [cost of services provided by the Iowa Department of Human Services].

*In re Marriage of Bergfeld,* 465 N.W.2d at 869.

The district court justified its variance from the chart by citing Freddie's exemplary payment record, his new familial obligations, and the inequity of increasing the award so markedly. The State contends on appeal that these reasons are insufficient under the statute and our guidelines. We must agree.

Freddie's fulfillment of a prior obligation, while commendable, furnishes no basis for a downward adjustment of his ongoing duty of support. He has done no more than by law he was required to do. Moreover, the mere size of the increase—even if substantial—does not itself create injustice if rationally related to the obligor's financial means.

The crucial question is whether enforcement of the guidelines will result in substantial injustice given Freddie's commitment to a second family. In *Ladely,* we considered at length the problems inherent in balancing the equities where "serial families" are involved. *See Ladely,* 469 N.W.2d at 665. While rejecting the notion that new familial obligations automatically justify a departure from the guidelines, we noted several factors worth weighing on a case-by-case basis:

(1) Whether the new support obligation has been court ordered or voluntarily assumed;

(2) Whether the payor's financial commitment to others is reasonable and necessary;

(3) The extent to which the claimed obligation is actually paid;

(4) To what degree the actual payment to a second family affects the payor's financial ability to meet the presumptively applicable guideline figure in the pending proceeding.

*See id.* at 665 (citing *In re C.D.,* 767 P.2d 809, 812 (Colo.App.1988)).

Turning to the case before us, we note that Freddie's net monthly earnings (when not on layoff) reduced by the guideline figure of $271 would leave $1234 for support of himself, his spouse, one natural child and a stepson. Such a sum by no means leaves room for lavish spending. During times of layoff, forbearance in collection may be in order. Yet the record reveals that Freddie's obligation to his new family was voluntarily undertaken. The record also suggests that his new wife does not contribute financially to the family. No reason appears why she could not do so. Nor does the record reveal whether any effort has been made to seek support from the stepson's father.

Giving due consideration to these factors, we cannot say that requiring Freddie to pay $271 per month towards the support of Frederick is inappropriate or unjust. The district court's findings to the contrary are not supported by this record. Accordingly, we modify the district court's support order and direct that Freddie's monthly child support award for Frederick be fixed at $245 from August 7, 1990, to December 30, 1990, and $271 per month thereafter.

AFFIRMED AS MODIFIED.