**STATE of Iowa ex rel. Trevor Wendell NICHOLSON,**

**and**

**State of Iowa ex rel. Iowa Department of Human Services, and Shawn Green, on Behalf of Brandon Toftee, Appellees,**

**v.**

**John Wayne TOFTEE, Appellant.**

**No. 91–678.**

Supreme Court of Iowa.

Jan. 20, 1993.

Charles Deppe and Douglas Cook of Brekken, Deppe & Wynia, Jewell, for appellant.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Sp. Asst. Atty. Gen., Robert R. Huibregtse, Asst. Atty. Gen., and Rhonda Fitchett, Asst. County Atty., for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN and SNELL, JJ.

SNELL, Justice.

This case presents a recurring problem of how to determine child support obligations in a fair manner. We have established child support guidelines to further that end. A difficult situation has arisen in this case from the fact that three children of the same father are living in three separate households. The trial court used the guidelines table for one child to fix the amount of support; the court of appeals used the table for two children and modified the result. On further review, we now vacate the decision of the court of appeals and affirm with modification the judgment of the district court.

The case began as a declaratory judgment action to establish paternity. John Toftee then stipulated that he is the father of Heather Toftee, Brandon Toftee, and Trevor Wendell Nicholson. Heather Toftee is John Toftee's oldest child, born to Debbie L. Toftee on September 8, 1976. John's second child is Brandon Toftee born on August 28, 1983, to Shawn M. Green. The third child, Trevor Wendell Nicholson, was born to Mary Nicholson on July 28, 1990. The State of Iowa, representing Brandon and Trevor, brought an action for child support from John Toftee.

By earlier decree of divorce, John Toftee was required to pay $125 per month support for Heather Toftee. The parties stipulated and the trial court agreed that the amount would remain fixed and unaffected by this action. We decide the present issues accepting that status. Shawn Green, mother of Brandon Toftee, has a monthly income of $600. Mary Nicholson, mother of Trevor Nicholson, has no monthly income. John Toftee's monthly income is $1050.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

On September 29, 1989, this court entered an order prescribing the Uniform Child Support Guidelines which became effective October 12, 1989. Later, we amended these guidelines, effective December 31, 1990, which are those applicable to this case. *See* Supreme Court Order re: Child Support Guidelines, Dec. 31, 1990.

■ The purpose of the guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes. While the guidelines cannot take into account the specific facts of individual cases, they will normally provide reasonable support. In ordering child support, the court should determine the amount of support specified by the guidelines. There shall be a rebuttable presumption that the amount of child support that would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded. That amount may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case.

Our guidelines define "net monthly income" as a sum reached after subtracting from "gross monthly income" deductions of ten specific types. Deduction number

nine is for "prior obligation of child support and spouse support actually paid pursuant to court or administrative order." The obligation to pay $125 monthly for Heather Toftee's support fits this category.

The trial court subtracted $125 from John's gross monthly income of $1050 to obtain the net monthly income of $925. The court then determined the amount of child support for Brandon, the second child, by applying the chart for one child. With John's net income established at $925 and Shawn Green's, the custodial parent, at $600, the percent of 24.1 was applied. This resulted in a support amount of $223 for Brandon ($925 × 24.1% = $222.93).

In computing support for Trevor, the third child, the court then subtracted $223 from John's net monthly income of $925, which yields $702. Applying the chart for one child with Mary Nicholson having no income results in a figure of 25.0%. Child support for Trevor was then fixed at $175.50 ($702 × 25.0% = $175.50). These obligations left John Toftee with $526.50 for personal living expenses. The court made no finding of special circumstances to warrant deviating from these guidelines as is allowed by the guidelines standards themselves.

John Toftee urged and the trial court denied an application of the chart pertaining to three children instead of the one-child chart. Under the three-child chart, the amounts would be $412.65 for three children figuring total custodial parent income at $600 ($1050 × 39.3% = $412.65). Allocated equally, each of three children would receive $137.55. If Heather's support remained at $125, the other two children would receive one-half of the remaining $287.62 or $143.81. John Toftee's remainder for living expenses would be $637.35. Alternatively, John Toftee argues that he should pay $125 to each of his three children or $375 total, leaving him a balance of $675.

On appeal, the Iowa Court of Appeals determined that neither the chart for one child nor that for three children produced a result that was fair. That is because the three children are all in separate house-holds other than John Toftee's. The court of appeals reasoned that treating this situation the same as one in which all three children live in the same household where the three-child chart would apply results in a computation that is artificially low for each child. However, using the one-child chart for the two children involved in this case commits a very large portion of Toftee's monthly income to child support. For these reasons, the court of appeals applied the chart for two children. It then adjusted the outcome to reflect the disparate employment circumstances of each mother. Under its final calculation, Brandon's support was set at $131 and Trevor's at $180. This left John with monthly income of $614.20.

Although the result reached by the court of appeals seems fair enough, we do not believe the method used follows our prior cases. In *Gilley v. McCarthy*, 469 N.W.2d 666 (Iowa 1991), we applied the chart for one child rather than the three-child chart in which the father had two children from his existing marriage in addition to the child for whom support was sought. We noted that "[b]y adopting these guidelines we intended that trial courts select a chart consistent with the number of children who live in the custodial parent's household and can legally claim both parties as parents." *Id.* at 668. In *Gilley,* only one child fit this description. We agreed with the trial court that there were no special circumstances calling for deviating from the one-child chart. In application, the noncustodial father was required to pay $591.64 from his net monthly income of $3521.65 leaving him $2930.01. We noted that the chart for three children was inappropriate because only one of the three children lived in the custodial mother's home to share expenses and to claim both parents for support. These circumstances thus would not justify the lower amounts allowed under the three-child chart. *See also State ex rel. Cacek v. Cacek,* 484 N.W.2d 592 (Iowa 1992) (we applied the chart for one child even though three other children not of the father lived in the home of the custodial mother).

At the same time, we recognized in *Gilley* that application of the one-child percentage to serial children living in separate households could lead to an unreasonable result. For example, a father of five could be required to pay eighty-five percent of his gross income in support. *See In re A.S.D.*, 125 Wis.2d 529, 372 N.W.2d 921 (Ct.App.1985).

In *State ex rel. Department of Human Services v. Burt*, 469 N.W.2d 669 (Iowa 1991), we rejected an argument that the guidelines reduced Roger's income below what was necessary for his own personal expenses, which the trial court found as a reason for a departure from the guidelines. We said:

> In establishing the guidelines, the court undertook to balance the needs of children against the legitimate needs and expenses of the payor parent. In other words, the guidelines already take into account the reasonable living expenses of the noncustodial parent, the very subject which prompted the district court to depart from the guidelines. In the absence of special circumstances, the reasonable living expenses of the noncustodial parent do not provide a ground for departing from the guidelines.

*Id.* at 670.

In the *Burt* case, Roger had a net income of $915 per month reduced by $45 for health insurance coverage, an allowable deduction. For guidelines purposes his net of $870 called for support of 25.3% or $220, leaving him a net for himself of $650. Additionally, he was ordered to pay $20 per month to apply on past due obligations.

In *In re Marriage of Ladely*, 469 N.W.2d 663 (Iowa 1991), we addressed the problem of priority of obligations toward older children compared to second family obligations. We then embraced the first mortgage concept that the guidelines' support for a parent's older child should not be deviated from merely because the noncustodial parent now has a new family to support when the record does not show insufficient funds available to the second family for its support. Applying the chart for one child, we found that Kenneth's net monthly income of $2112 was sufficient to pay $511 for support of his oldest child, even with his current family obligations to three other children by his present marriage.

Similarly, in *State ex rel. Epps v. Epps*, 473 N.W.2d 56 (Iowa 1991), we applied the chart for one child in computing an increase of support for the first-born child when the father had remarried and was living with his second wife, their newborn child and the thirteen-year-old son of his second wife. No special circumstances were recognized to justify deviating from the guidelines. A monthly child support of $271 was ordered which left the father a net monthly income of $1234 to support himself, his wife and their family.

We recognize that our guidelines are set up from the premise that the children for whom support is sought are all living in the custodial parent's home. As such, there is some sharing of expenses that moderates their needs below that required to maintain children in separate households. We note also that the charts assume and build into the guidelines an amount of income needed by the noncustodial parent for personal living expenses. For these reasons and to achieve uniform statewide application as much as possible, we encourage little deviation from the guidelines.

These goals, particularly when we have several children living in separate households, are difficult to achieve and make the selection of the most applicable chart even more critical. The support indicated by our guidelines often must rationally give as much help to the children as is within the reality of limited resources available to the noncustodial parent. It is as destructive to the children's welfare as to the noncustodial parent to fix child support amounts that impoverish the provider.

We decide the case at bar with the support of $125 per month for Heather Toftee unadjusted. John Toftee argues that an upward change will likely be sought after this case. We do not deny the possibility but have no facts here to indicate a likely success if a modification is urged.

Our approach then is to fix support for two children each living in a household separate from their father's. We believe it is necessary to closely adhere to the structure of our guidelines so that uniformity and predictability is provided to the bench and bar. For these reasons we apply the chart for one child to both children, Brandon Toftee and Trevor Nicholson. This will best conform to our interpretation and application of the guidelines in our prior cases. *See Cacek*, 484 N.W.2d at 593–94.

Starting with a monthly net income figure of $925 for John Toftee and $600 for Shawn Green, the custodial parent of Brandon Toftee, the percent of 24.1 is obtained. This results in a suggested support amount of $223 for Brandon Toftee ($925 × 24.1% = $222.93).

In computing the proposed support figure under the guidelines for Trevor Nicholson, the third child, we apply the guidelines for one child without regard initially to the result already reached as to Brandon Toftee's support. This is because deduction number nine applies only to child support actually paid pursuant to court order. No court order regarding Brandon Toftee's support is in effect. Since Mary Nicholson, the custodial parent of Trevor, has no income we obtain a support percent of 25.6 based on John Toftee's monthly income of $925. This computes a projected support figure of $237 for Trevor ($925 × 25.6 = $236.80). The combined child support payments for Brandon and Trevor, unadjusted, would be $460 leaving $465 to John Toftee for his expenses.

In *Burt*, 469 N.W.2d at 670, we noted that a court can vary from the amount of child support required by the guidelines to provide for the needs of the child and to do justice between the parties. *See also Cacek*, 484 N.W.2d at 593. This is such a case. We find it is inequitable to so severely reduce the amount of income left available for John Toftee's living expenses. Based on the affidavit of financial status furnished at trial by John Toftee, we find his living expenses per month to be $600. We therefore must adjust the amounts projected by the guidelines for child support to achieve fairness as best we can to John Toftee as well as to the children he supports. Giving some recognition to the $600 monthly income available to Shawn Green we believe it is appropriate to order a larger amount of support for Trevor Nicholson than for Brandon Toftee. Accordingly, we fix the child support payments due at $155 per month for Brandon Toftee and $170 per month for Trevor Nicholson.

The decision of the court of appeals is vacated; the judgment of the district court is affirmed with modification and remanded for entry of order.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.