STATE of Iowa, ex rel., Nathan Scott REAVES, A Minor Child by Cindy REAVES, Appellant,

v.

Chris KAPPMEYER, Appellee.

No. 92–1147.

Supreme Court of Iowa.

March 23, 1994.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Kay Delafield, Asst. Attys. Gen., and James A. Lally, Asst. County Atty., for appellant.

David James Hanson, Hofmeyer, Anthony, Hurley & Hanson, Fayette, for appellee.

Considered by CARTER, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

We granted the State's application for further review of a court of appeals decision modifying the district court's order setting child support. We vacate the court of appeals decision and affirm the judgment of the district court.

I. *Background Facts and Proceedings.*

In our de novo review of this equity proceeding, we find the following facts. *See* Iowa R.App.P. 4. Nathan Reaves was born on November 30, 1982. Cindy Reaves is Nathan's mother. Blood tests performed as part of this proceeding established that there was a 99.33% probability that Chris Kappemeyer is Nathan's father. Unfortunately for all concerned Chris did not know of Nathan's existence until this action was brought by the State almost seven years after Nathan's birth.

Cindy and Chris did not know each other before meeting in an Oelwein bar in February 1982. They became acquainted one evening and Nathan was conceived that night. Chris and Cindy did not have any contact after that occasion. When Cindy discovered that she was pregnant, she decided to give up the child for adoption so she did not

inform Chris, whom she believed to be the father. Upon Nathan's birth Cindy abandoned her plans of adoption. However, she still did not inform Chris of his child's birth because she heard that he was engaged and was to be married shortly.

After Nathan's birth Cindy applied for Aid to Dependent Children (ADC) benefits, naming Chris as Nathan's father in her application for benefits. She received ADC benefits from 1982 until 1987. Neither she nor the State located Chris during this period even though he continued to reside in the Oelwein area.

Meanwhile Chris married his present wife, Rhonda, in December 1982, and they now have three minor children. Chris is a high school graduate and works at FECO, Inc. as a service technician. He has a net monthly income of $1243. Rhonda is employed full-time and has a gross monthly income of approximately $867.

Cindy has an associate degree in nursing and works at a Waterloo hospital as a registered nurse. Her net monthly income is $1605. She lives with her son, Nathan, her six-year-old daughter and her boyfriend. Her boyfriend gives her about $433 each month for their joint living expenses. Although Cindy knows who the father of her daughter is, there was no evidence that she receives support from this man or that she has even attempted to obtain support from him.

In 1989, Cindy learned of Chris' whereabouts and notified the State. She wanted to establish Chris' paternity so that Nathan could know his father. The State filed this action pursuant to Iowa Code chapter 252A, seeking to establish paternity and to obtain child support. In recognition of the long delay in seeking support from Chris, the State did not ask for any accrued child support.

After trial, the court ruled that Chris was Nathan's father. Chris was ordered to pay child support of $50 per month from the date of the blood test report in November 1990. The court deviated from the amount of support payable according to the child support guidelines. The court believed that payment of the guidelines amount would result in a substantial injustice to Chris in view of the long time period elapsing between Nathan's birth and the claim of paternity. The State appealed and we transferred the case to the court of appeals.

The court of appeals held that the lapse of time between Nathan's birth and this action was not a sufficient reason to deviate from the guidelines. Relying on an amendment to Iowa Code section 598.21(4) (1991), the court fashioned a new method for calculating support in multiple family situations. The court computed a hypothetical amount of support Chris would be obligated to pay for three children under the guidelines and then subtracted this amount from Chris' income to arrive at a net monthly income of $759. Using this income figure and the chart for one child, the court calculated Chris' monthly support payment at $149.

We granted the State's application for further review. Our review begins with a discussion of the procedure used by the court of appeals to determine support.

## II. *Support Ordered by Court of Appeals.*

In modifying the district court's support order, the court of appeals relied on a 1993 amendment to section 598.21(4). This amendment directed the supreme court, in its periodic review of the guidelines, to consider other children for whom either parent is legally responsible for support in setting monthly child support payments. 1993 Iowa Acts ch. 79, § 48.

The court of appeals interpreted this amendment to require the district court to consider the noncustodial parent's obligation to support other children the same as court-ordered support obligations. Court-ordered support obligations are deducted from gross income in computing a parent's net monthly income. Consequently, the court reduced Chris' monthly income by a hypothetical amount of support for his other three children and then applied the one child table to that reduced figure to arrive at the monthly support payment.

The interpretation the court of appeals gave to amended section 598.21(4) and the

procedure it used in applying the guidelines under its interpretation were incorrect. In a case decided after the court of appeals decision here, we held that the recent amendment to section 598.21(4) does not require the district court to alter the manner in which it computes net monthly income to account for a parent's support obligations that are not court-ordered. *State ex rel. Hartema v. Cottrell,* 513 N.W.2d 765 (Iowa 1994). We concluded that the legislature intended to direct our court to consider in our next review of the guidelines the fact that a parent may also be supporting other children. *Id.* at 767. Consequently, the court of appeals erred in deducting from Chris' net monthly income the amount of support he would have to pay for three children.

### III. *Support Ordered by the District Court.*

 Our child support guidelines are to be strictly followed unless their application would lead to an unjust or inappropriate result. Iowa Code § 598.21(4)(a) (1991). There is a rebuttable presumption that the amount of child support determined according to our guidelines is the correct amount of child support to be awarded. *In re Marriage of Brown,* 487 N.W.2d 331, 333 (Iowa 1992). That amount may be adjusted upward or downward if the court finds an adjustment necessary to provide for the needs of the children and do justice between the parties under the special circumstances of the case. *State ex rel. Nicholson v. Toftee,* 494 N.W.2d 694, 695 (Iowa 1993). To justify a departure from the guidelines, the court must make written findings that the scheduled amount would be "unjust or inappropriate" under the criteria established by this court. Iowa Code § 598.21(4)(a) (1991).

The district court found that substantial injustice would result to Chris if the guidelines were applied here because of the lapse of time between Nathan's birth and the paternity claim. The district court did not calculate the amount of support that should be awarded under our guidelines and then adjust that amount. Instead, the court set an amount of support that it believed would be fair without any reference to the guidelines.

 We believe that the preferable procedure is to determine the guideline support amount first. Only when that figure is known can the court decide whether an adjustment of that amount is warranted under the special circumstances of the case.

 In addition, we agree with the court of appeals that the lapse of time before the claim of paternity was made here is an insufficient reason to deviate from the guidelines. The lapse of time in and of itself does not relate to Chris' ability to pay support. The crucial question is whether enforcement of the guidelines will result in substantial injustice given Chris' financial commitment to other children. *See State ex rel. Epps v. Epps,* 473 N.W.2d 56, 59 (Iowa 1991).

The district court made no written finding that the amount of support calculated under the guidelines would result in injustice due to Chris' financial obligations to his family, although it is possible that this is what the court had in mind when it referred to the delay in bringing this action. Nevertheless, the district court's articulated reason for deviation from the guidelines is not acceptable. Therefore, we cannot approve the district court's rationale for setting Chris' support obligation at $50 per month.

### IV. *Determination of Support Obligation.*

 To decide on an appropriate support payment, we first select the guideline chart consistent with the number of children who live in the custodial parent's household and can claim both parties as parents. *Gilley v. McCarthy,* 469 N.W.2d 666, 668 (Iowa 1991). In this case, Nathan is the only child in the custodial home who can claim both parties as parents. Therefore, we apply the one child chart using both parents' net monthly incomes.

In determining the parents' net monthly incomes, we do not consider the $100 Cindy receives weekly from her live-in boyfriend or the income of Rhonda Kappemeyer. Consequently, we apply the table based on Cindy's net monthly income of $1605 and Chris' net

monthly income of $1243. The guidelines require that Chris pay 22.5% of his net monthly income, or $280, in support of Nathan.

We next consider whether awarding the guideline amount would result in a substantial injustice to Chris. Other familial obligations do not automatically justify a departure from the guidelines. *See Gilley,* 469 N.W.2d at 668–69. However, the consideration of expenses related to support of the three children from Chris' marriage is germane in determining his financial ability to pay and whether a strict application of the guidelines will result in substantial injustice. *Epps,* 473 N.W.2d at 58.

Chris submitted an affidavit of financial affairs and testified in detail to his monthly expenses. Even considering his wife's gross income, Chris and Rhonda barely meet their monthly expenses. In contrast, Cindy's income exceeds her family's living expenses by approximately $435 each month. In addition, she receives another $433 each month from her boyfriend to help with these expenses. We also note that Chris' obligation to his three children was undertaken without knowledge of Nathan's existence. Finally, we consider that there was no evidence that Cindy could not receive financial assistance for her living expenses from the father of her daughter.

We find that Chris' financial obligation to his other children significantly hinders his ability to pay the scheduled amount of child support. Furthermore, ordering Chris to pay $280 per month would result in an injustice to him and his other children. Consequently, a downward adjustment is necessary under the circumstances of this case. *See Nicholson,* 494 N.W.2d at 698 (downward adjustment of guideline amount was necessary to achieve fairness to noncustodial father and children he supports). We conclude that a reduction of the guideline support figure to $50 per month is justified and therefore, we affirm the district court judgment on this basis.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**