513 N.W.2d 765 (1994)
STATE of Iowa, ex rel., DEPARTMENT OF HUMAN SERVICES, Tyler Jon Hartema, A Minor, By and Through His Mother and Next Friend, Amelia Martha Hartema, Appellee,
v.
Jon R. COTTRELL, Appellant.
No. 93-191.
Supreme Court of Iowa.
March 23, 1994.
*766 Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Robert R. Huibregtse, Asst. Atty. Gen., and Joaquin Jones, Asst. County Atty., for appellee.
J. Mathew Anderson of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, P.L.C., Mason City, for appellant.
Considered by CARTER, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.
TERNUS, Justice.
This appeal involves the application of our child support guidelines in light of a recent amendment to Iowa Code section 598.21(4) (1991), the statute governing orders for support. Based in part on this amendment, the court of appeals modified the amount of past and future child support ordered by the district court. We granted the State's application for further review and now vacate the decision of the court of appeals and affirm the district court's decision with modification.

I. Background Facts and Proceedings.

In our de novo review of this equity proceeding, we find the following facts. See Iowa R.App.P. 4. Tyler Hartema was born on July 28, 1991. His mother is Amelia Hartema and his father is Jon Cottrell. Tyler's parents have never been married to each other. At the time of Tyler's birth and thereafter, Jon was married to Julie Cottrell. Jon and Julie have three minor children. Amelia is single. Tyler is her only child.
Jon is a coil line operator at Curries Company and earns $13.02 an hour. Julie is unemployed. She has a partial shoulder disability and cannot work full-time.
Amelia has worked almost continuously in the six years since she graduated from high school. However, she was unemployed after Tyler's birth from August 1991, until January or February of 1992. Amelia received Aid to Dependent Children (ADC) benefits during this period.
Prior to the hearing, Amelia had most recently worked at IMI Cornelius where she earned $6.20 an hour and at General Foods where she earned $5.25 an hour. Amelia lost her job at IMI Cornelius because she "was undependable because [her son] was sick." She quit her job at General Foods shortly before the support hearing because working the night shift there made it difficult for her to find child care for Tyler. In October 1992, Amelia reapplied for ADC.
Amelia testified at the hearing that she planned to find another job. A State program would provide thirty hours of free child care for her while she looks for employment. Nevertheless, she had not yet applied for any positions. The record showed that had Amelia not left her job, she would have had a net income of $873 per month.
Pursuant to Iowa Code chapter 252A, the Department of Human Services (State) sought current support and accrued support for Tyler. After receiving evidence, the district court found that Jon's net income per month was $1684 and that Amelia's net income per month was $0. Using the table for one child from the child support guidelines, the court calculated Jon's support obligation for Tyler as $434 per month, 25.8% of his monthly income. The court also held that Jon was required to pay accrued support in this amount from August 1991. Jon appealed.
In its de novo review the court of appeals modified the district court's support order. The court first held that a 1993 amendment to section 598.21(4) required the district court to consider the noncustodial parent's obligation to support other children. See 1993 Iowa Acts ch. 79, § 48. The court then concluded that the district court should have computed the amount of support Jon would be obligated to pay under the guidelines for the three children in his home and deduct *767 this amount from Jon's gross income to calculate his net monthly income.
Using this method, the court of appeals computed Jon's net monthly income as $951. The court also found that Amelia had voluntarily quit working. Therefore, the court averaged her monthly wages from her past two jobs and attributed to her a net monthly income of $758. Using these income figures and the one child table, the court then determined the amount of support Jon should pay for Tyler, $233 per month.

II. Effect of Amendment to Section 598.21(4).

Section 598.21(4) requires that the supreme court maintain uniform child support guidelines and criteria and review the guidelines and criteria at least once every four years. Effective July 1, 1993, the legislature amended section 598.21(4) by adding the following language:
It is the intent of the general assembly that, to the extent possible within the requirements of federal law, the court and the child support recovery unit consider the individual facts of each judgment or case in the application of the guidelines and determine the support obligation, accordingly. It is also the intent of the general assembly that in the supreme court's review of the guidelines, the supreme court shall do both of the following: emphasize the ability of the court to apply the guidelines in a just and appropriate manner based upon the individual facts of a judgment or case; and in determining monthly child support payments, consider other children for whom either parent is legally responsible for support and other child support obligations actually paid by either party pursuant to a court or administrative order.
1993 Iowa Acts ch. 79, § 48 (emphasis added).
The court of appeals interpreted this amendment to require the district court to "consider a parent's legal responsibility to support other children in a manner similar to court-ordered child support obligations." Because court-ordered child support obligations are a deduction from gross income in arriving at a parent's net income, the court of appeals concluded that a similar deduction must be made for the hypothetical amount a parent would be obligated to pay as child support for children who are not the subject of the pending support proceeding. This procedure is contrary to the manner in which we have previously applied the guidelines. See Gilley v. McCarthy, 469 N.W.2d 666, 668 (Iowa 1991).
We do not agree with the court of appeals' conclusion that the amendment is a mandate to district courts to employ a new procedure for applying the current support guidelines. When our court first set out to establish uniform support guidelines, we appointed a task force comprised of judges, attorneys, legislators, and staff members of the Department of Human Services. After much study this task force presented to our court proposed uniform guidelines. These proposed guidelines were then circulated to members of the bar and the public for comment. Finally, after some revision, our court issued the uniform support guidelines in September 1989. We adopted revised guidelines in October 1990.
We believe the legislature intended that a similar studied approach be used in determining whether the guidelines should be revised to factor in parents' support obligations for other children. The plain language of the amendment says that "in the supreme court's review of the guidelines, the supreme court shall do both of the following: ... consider..." 1993 Iowa Acts ch. 79, § 48 (emphasis added). We need not look for a statute's meaning beyond its express language when the language is clear and the meaning is obvious. See Iowa R.App.P. 14(f)(13).
The amendment to section 598.21(4) is directed to the supreme court and our review of the guidelines. It does not mandate a specific change, only that consideration be given in some manner for support provided for other children for whom either parent is responsible. Perhaps what the court of appeals has suggested will ultimately be found a desirable way to address the legislature's concern and accommodate the needs of other children who are not the subject of the support *768 proceeding. However, we believe the legislature intended that such a decision be made after the opportunity for broad input and extensive discussion during the guidelines review process. Consequently, any changes in the guidelines and their application must await the completion of that review.
We now determine the correct amount of support under our current guidelines, applying them in accordance with existing case law.

III. Determination of Support Obligation.

Our child support guidelines are to be strictly followed unless their application would lead to an unjust or inappropriate result. See Iowa Code § 598.21(4)(a) (1991). To determine monthly child support payments, the guidelines direct the court to multiply the noncustodial parent's "net monthly income" by a percentage derived from a table. In re Marriage of Brown, 487 N.W.2d 331, 333 (Iowa 1992). The applicable table is determined based on the number of children who live in the custodial parent's household and can legally claim both parties as parents. Gilley, 469 N.W.2d at 668.
Because Tyler is the only child who lives in the custodial parent's home and can claim both parties as parents, the table for one child applies. Jon asks us to apply the table for four children. However, the consideration of expenses related to support of the three children from Jon's marriage is not a valid reason to alter the application of the guidelines. Id. It is germane only to Jon's financial ability to pay and whether a strict application of the guidelines will result in substantial injustice. State ex rel. Epps v. Epps, 473 N.W.2d 56, 58 (Iowa 1991).
We agree with the court of appeals that the record supports a finding that Amelia voluntarily reduced her income. Therefore, we attribute to her a net monthly income of $873 based on the monthly income she received from her last job. See State ex rel. Lara v. Lara, 495 N.W.2d 719, 722 (Iowa 1993); In re Marriage of Powell, 474 N.W.2d 531, 534 (Iowa 1991). Jon's net monthly income is $1684. Applying the parents' incomes to the one child table, Jon should pay support of $396 per month.
Our guidelines create a rebuttable presumption that the guideline amount of child support is the correct amount of support to be awarded. In re Marriage of Gulsvig, 498 N.W.2d 725, 727 (Iowa 1993); Iowa Code § 598.21(4)(a) (1991). However, the guideline amount may be adjusted upward or downward if the court finds an adjustment necessary to provide for the needs of the child and do justice between the parties under the special circumstances of the case. State ex rel. Nicholson v. Toftee, 494 N.W.2d 694, 695 (Iowa 1993).
In our de novo review we find no special circumstances that would justify a deviation from the guidelines. Jon did not submit a financial statement showing the monthly expenses of his family. The only information regarding his expenses was his testimony that he pays $800 per year for two of his children to attend a private school.
Although we are sympathetic to Jon's situation, we have no factual basis on this meager record to conclude that he is unable to pay the amount of support required by the guidelines or that payment of the guidelines amount will prevent him from meeting his personal expenses and those of his other children. In the Nicholson case we deviated from the guidelines where the noncustodial parent submitted a financial affidavit showing his personal living expenses and thereby documented his inability to meet those expenses if he were ordered to pay the amount required by the guidelines. State ex rel. Nicholson, 494 N.W.2d at 698. A similar record was not made here. Therefore, we are unable to justify a deviation from the guidelines.

IV. Disposition.

We vacate the decision of the court of appeals and affirm the district court's decision with modification. We order Jon to pay child support of $396 per month. The reimbursement amount for back child support is $6732. Any overpayment made by Jon in light of our modification of his monthly support *769 obligation shall be applied to reduce the reimbursement amount. The district court's order is affirmed in all other respects.
DECISION OF COURT OF APPEALS VACATED; DECISION OF DISTRICT COURT AFFIRMED AS MODIFIED.