**STATE of Iowa ex rel. Nancy NIELSEN, Appellee,**

v.

**Dale NIELSEN, Appellant.**

No. 93–413.

Supreme Court of Iowa.

Sept. 21, 1994.

Steven C. Pals and Bradley K. De Jong, Orange City, for appellant.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Sp. Asst. Atty. Gen., Robert R. Huibregtse, Asst. Atty. Gen., and Janet L. Hoffman, Asst. Co. Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The noncustodial parent appeals from a modification order that increased the amount of child support he is required to pay. Upon review we affirm.

## I. *Background.*

On June 18, 1980 the district court ordered Dale Nielsen to pay $250 per month child support for Dody and Jason Nielsen. This award was granted upon the application of the child support recovery unit, Iowa Department of Social Services (now Iowa Department of Human Services). The court's support award approved the terms and conditions of a stipulation between the parents of the children.

Upon request of the children's mother, Nancy Nielsen, the child support recovery unit initiated on December 19, 1991 a modification proceeding in district court for review of the child support award. *See* Iowa Code § 252B.5(7) (1991). The matter was set for trial and was submitted to the court on briefs and financial affidavits of the parties on December 21, 1992.

Based on his average income in 1986–1992, the court found Dale's average net income was $1973 per month. The court applied the Iowa child support guidelines and ordered modification of the child support provisions of the 1980 decree to require Dale to pay $690.55 per month for support of Dody and Jason. The order also provided that on August 1, 1992, when Jason reached age eighteen, the support for Dody would be $489.30 per month. The court ordered the increased child support obligation would be retroactive to the date the petition to modify was filed.

■ Dale appeals from the court's modification order. Two issues are raised on appeal. First, Dale claims the court should have allowed a reduction of his net monthly income for payments of prior years' income tax deficiencies. Second, he claims the court should have deviated from the Iowa child support guidelines because of his obligations to support other children. Our review of the modification order is de novo. Iowa R.App.P. 4.

## II. *Deduction of Income Tax Deficiency.*

In settlement of an income tax obligation arising in 1983, 1984, and 1985, Dale agreed to a compromise requiring him to pay annually to the internal revenue service a percentage of his annual adjusted gross income. He urged that the amount paid under the terms of the settlement should be deducted in arriving at his net income for guideline purposes. Based upon a $50,000 annual adjusted gross income, he urged the amount paid upon the income tax deficiency would be $417 per month. The trial court refused to allow a deduction for the payments of income tax deficiencies of prior years from gross income based on the average income in 1986–1992.

■ To arrive at an appropriate child support award, the court must determine the net monthly incomes of the custodial and noncustodial parents and then apply the guideline chart consistent with the number of children of the parties living in the custodial home. Our guidelines provide the term "net monthly income" means gross monthly income less deductions for ten identified items, including "(1) federal income tax (properly calculated withholding or estimated payments)." To achieve fairness and uniformity, the "income tax deducted should be a figure that reflects actual ultimate income tax liability." *In re Marriage of Miller*, 475 N.W.2d 675, 679 (Iowa App.1991). Our guidelines specifically do not allow a deduction for voluntary savings or payment of indebtedness. Although actual payments of child support on prior child support orders are deductible from gross income, current payments on child support arrearages are not. *State ex rel. Davis v. Bemer*, 497 N.W.2d 881, 882 (Iowa 1993). Likewise, Dale's current payments, required under the 1990 compromise settlement of 1983–1985 income taxes, are not deductible in determining his average "net monthly income" after 1985.

## III. *Multiple Family Obligations.*

Following the dissolution of the marriage of Dale and Nancy, Dale remarried. Three children were born to this marriage. Upon dissolution of the second marriage, Dale was given custody of the children and he provides for their support without financial assistance from their mother. He again remarried. At the time of the modification proceeding, he was supporting two children of the second marriage and a stepchild of his third marriage. Dale urges a strict application of the guidelines under these circumstances will result in a substantial injustice.

■ The guidelines were designed to improve the adequacy of the support orders, to enhance consistent and equitable treatment of the parties, and to facilitate more efficient adjudication of the cases. *Gilley v. McCarthy*, 469 N.W.2d 666, 667 (Iowa 1991). In Iowa there is a rebuttable presumption that the amount of child support which would result from the application of the guidelines is the correct amount of child support to be awarded by the court. The court may adjust the amount to provide for the children's needs and to do justice between the parties. However, the court has no authority to vary from the guidelines without a written finding that the guideline amount would be unjust or inappropriate under the criteria contained in the guidelines.

■ Under the guidelines the economic impact of divorce on the children is minimized. The standard of living of a custodial parent and child often falls after the separation of the parents. If either parent later enjoys a higher standard of living, then the children of the marriage may share in that higher standard. Our guidelines are not designed to merely provide minimum child support to meet the minimum needs of the child. Ideally, the parents pay child support in an amount equal to what they would have provided for the child had the family stayed together.

■ Like most states, our guidelines do not specifically address the determination of the amount of child support in multiple family circumstances. The multiple family situation may arise from children of prior marriages, subsequent marriages, and from children born out of wedlock. We observe there is an increasing number of marriages that end with divorce and that divorced parents are likely to remarry. Upon remarriage the parents often have other children or provide support for stepchildren. When courts apply guidelines involving a parent who has remarried and is supporting children of the second marriage, they may protect the needs of the children of the first marriage, the second marriage, or both marriages. When first confronted with this issue, we adopted a "first family," or "first mortgage" approach to second family obligations. *In re Marriage of Ladely*, 469 N.W.2d 663, 664–65 (Iowa 1991).

■ In 1993 the Iowa legislature directed us, in our periodic review of the guidelines, to consider other children for whom either parent is legally responsible for support in setting monthly child support. 1993 Iowa Acts ch. 79, § 48. This statutory amendment did not require the court to consider the noncustodial parent's obligation to support other children as if they were subject to a court ordered support obligation. *McIntire v. Leonard*, 518 N.W.2d 793, 795 (Iowa 1994); *State ex rel. Reaves v. Kappmeyer*, 514 N.W.2d 101, 103–04 (Iowa 1994); *State ex rel. Hartema v. Cottrell*, 513 N.W.2d 765, 768 (Iowa 1994).

We have rejected attempts to use the guidelines chart that reflects the parties' children in the custodial parent's home and the children or stepchildren of the noncustodial parent. *Gilley*, 469 N.W.2d at 667. *See also Reaves*, 514 N.W.2d at 103–04; *In re Marriage of Gulsvig*, 498 N.W.2d 725, 727 (Iowa 1993). We have also rejected attempts to reduce the noncustodial parent's income by a hypothetical amount of support for other children that the noncustodial parent is supporting. *State ex rel. Epps v. Epps*, 473 N.W.2d 56, 58 (Iowa 1991). *See also State ex rel. Nicholson v. Toftee*, 494 N.W.2d 694, 696–97 (Iowa 1993).

■ We recognize the expenses for the support of children not subject to the action are germane in determining the financial ability of the noncustodial parent to pay the guideline child support amount. *Gulsvig*, 498 N.W.2d at 727; *Gilley*, 469 N.W.2d at 668. We have approved a downward adjustment when necessary under the circumstances. *Reaves*, 514 N.W.2d at 105; *Nicholson*, 494 N.W.2d at 695. In other cases we have found the circumstances did not justify deviation from the guidelines. *Hartema*, 513 N.W.2d at 768; *Gulsvig*, 498 N.W.2d at 727; *State ex rel. Cacek v. Cacek*, 484 N.W.2d 592, 594 (Iowa 1992); *Epps*, 473 N.W.2d at 59; *Ladely*, 469 N.W.2d at 665; *State ex rel. Dep't of Human Servs. v. Burt*, 469 N.W.2d 669, 671 (Iowa 1991).

■ The fact that Dale was supporting three children in addition to Dody and Jason is not sufficient to establish that the guidelines amount is inequitable or excessive. *See Ladely*, 469 N.W.2d at 665. Although expenses related to the support of the three children is germane in determining Dale's financial ability to pay the guideline support amount, the record fails to demonstrate the application of the guideline support amount will result in substantial injustice. Therefore we affirm the district court's modification order.

**AFFIRMED.**