**STATE of Iowa ex rel. Anthony Jacob MILES, A Minor Child, Appellee,**

v.

**Brett Allen MINAR, Appellant.**

No. 94–1080.

Court of Appeals of Iowa.

Sept. 22, 1995.

Linda Hansen Robbins of Irvine & Robbins, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Gordon Allen, Deputy Attorney General, Michael J. Parker, Assistant Attorney General, John Sarcone, County Attorney, and Carol Turner, Assistant County Attorney, for appellee.

Considered by DONIELSON, C.J., and CADY and HUITINK, JJ.

CADY, Judy.

This is an appeal from an order by the district court establishing paternity, imposing a child support obligation, and denying a petition for intervention. We affirm the district court with modification of the child support amount.

On May 12, 1993, the Child Support Recovery Unit of the State Department of Human Services initiated an action to establish paternity and support on behalf of Anthony Miles, born July 6, 1985. The petition claimed Brett Minar was the father of Anthony, which blood tests later confirmed. The case proceeded to trial to determine the support obligation.

Brett was 16 years old when Anthony was born. The mother, Teresa Richmond, was 18 years old. Brett and Teresa terminated their relationship after Teresa became pregnant, and did not maintain contact. Teresa supported Anthony without public assistance after he was born until October 1990, when she began receiving financial assistance from the State on behalf of Anthony.

Brett is married to Melissa Minar. They have two children. Travis was born on August 10, 1991 and Chase was born on September 3, 1993. Shortly before trial, Melissa filed a petition to intervene in the proceeding on behalf of Travis and Chase, claiming their two children would be harmed if Brett was required to pay child support for Anthony. The district court denied the petition.

Brett is employed as a mechanic with a net monthly income is $984.50. Melissa is also employed and earns net wages of $721.50. Brett and Melissa claim monthly expenses of $1,875, which includes $250 for rent and $258 for child care. Brett and Melissa rent their home from Brett's parents, and Brett's mother provides the day care. Brett's parents assist Brett and Melissa financially by not requiring them to make regular rent pay-

ments. Additionally, Brett's mother is not normally paid for her day care services.

The district court applied the child support guidelines and ordered Brett to pay $233 per month in support for Anthony. The court found no deviation from the guidelines was warranted under the circumstances. The court also ordered medical support of $17 per month.

On appeal, Brett argues his support obligation should be decreased from the guideline amount due to his financial commitment to his children from his marriage to Melissa. Melissa also claims the district court erred when it denied her petition for intervention.

## I. Child Support

The child support guidelines are strictly followed in determining a parent's child support obligation. *State ex rel. Reaves v. Kappmeyer,* 514 N.W.2d 101, 104 (Iowa 1994). The scheduled amount, however, is not unassailable, but may be increased or decreased if the court finds it is necessary to provide for the needs of the children or do justice between the parties under the special circumstances of the case. *Id. See* Iowa Code § 598.21(4)(a) (1993). On our de novo review of the district court's support order we must decide if the child support amount under the guidelines would be "unjust or inappropriate."[1] *Kappmeyer,* 514 N.W.2d at 104.

We begin our analysis by calculating the scheduled amount of monthly child support. *See Kappmeyer,* 514 N.W.2d at 104. The trial court found this amount to be $233, based on Brett's net monthly income of $982 and Teresa's imputed net monthly income in the range of $601 to $700. Neither party objected to the trial court's determination of the net monthly incomes. Under the most recent child support guidelines, however, Brett would be entitled to a qualified additional dependent deduction of $142, which would further reduce his net monthly income to $840. The monthly child support obligation under the guidelines, therefore, would

be reduced to $198. Thus, we turn to the fighting question whether the guidelines amount would still result in a substantial injustice to Brett given his financial commitment to his current marriage. *See State ex rel. Epps v. Epps,* 473 N.W.2d 56, 59 (Iowa 1991).

The mere lapse of time before the paternity claim was brought against Brett is an insufficient reason to support a departure from the guidelines. *Kappmeyer,* 514 N.W.2d at 104. Instead, we must decide if his present family obligations justify a departure from the guideline amount despite the consideration given to these obligations under the guidelines through the qualified dependent deduction. This deduction results in a $35 monthly reduction of Brett's support obligation.

Brett is able to meet his monthly family expenses only because of the generous assistance of his parents. Any additional financial obligation assumed by Brett will only strengthen his reliance on his parents as a source of financial assistance, at a time when his parents want Brett to become less dependent. Brett's parents expect him to begin paying rent, and Brett's mother does not intend to provide day care for a prolonged period of time. We believe it is appropriate to consider these circumstances in deciding whether the imposition of the child support guideline amount would lead to an unjust or inappropriate result.

Brett and his wife are both employed on a full-time basis. Their joint net monthly income is $1,706. Their monthly family expenses would exceed $1,800 without the continued assistance from Brett's parents. They have been unable to accumulate savings, have acquired few assets, and live modestly. Teresa is married. She does not work outside the home. She receives food stamps and medical benefits, but no longer receives ADC payments due to her husband's current income level.

We conclude Brett's financial obligations significantly impede his ability to pay the

1. We acknowledge that new child support guidelines went into effect during the pendency of this appeal. On our de novo review, we are obligated to apply these new guidelines to determine the child support obligation after July 1, 1995. *See*

*In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991). In this case, however, the percentage used to fix the child support amount is the same under both the old and new guidelines.

guideline amount of child support for Anthony. The scheduled amount would result in an injustice to him and his other children. It would leave him with $786 each month to support himself and his family. Thus, a downward adjustment is required.

We find that Brett's monthly child support obligation should be set at $135. We believe this amount strikes a fair balance between the needs of all his children and his ability to contribute to those needs. The judgment of the district court is modified accordingly. We affirm the medical support amount of $17 per month.

## II. Intervention

■ We review the denial of a petition to intervene on error. *In re Estate of DeVoss,* 474 N.W.2d 539, 541 (Iowa 1991). We recognize the trial court is given some discretion to deny intervention in proper cases. *Id.*

■ Nonparties are permitted to intervene in pending actions when they are "interested" in the subject of the litigation or the success of either party to the lawsuit. Iowa R.Civ.P. 75. Our appellate courts have observed that the interest involved to support intervention must be derived from some legal right or liability which would be impacted by the judgment sought by the parties. *In re C.L.C. & A.M.B.,* 479 N.W.2d 340, 343 (Iowa App.1991). A potential intervenor must typically have more than a speculative or contingent interest. *DeVoss,* 474 N.W.2d at 542.

■ No definitive or precise test exists to determine the sufficiency of the interest required for intervention. *See State ex rel. Turner v. Iowa State Highway Comm'n,* 186 N.W.2d 141 (Iowa 1971) (Sufficient interest is the test for the right to intervene). Instead, we approach the inquiry with flexibility, and focus on the circumstances of each case. *See United States v. Perry County Bd. of Educ.,* 567 F.2d 277, 279 (5th Cir.1978). It is also useful to examine each request to intervene in light of the policies underlying our rule permitting intervention. The purpose of the rule is to reduce litigation by involving as many interested persons as possible and expeditiously dispose of lawsuits. *Rick v. Boegel,* 205 N.W.2d 713, 717 (Iowa 1973).

■ In this case, we are unable to conclude the trial court exceeded the scope of its discretion in denying Melissa's petition to intervene. Melissa sought intervention on behalf of her children to protect their interest in Brett's ability to provide financial support to them. Parents have a legal obligation to support their children, enforceable through actions brought on behalf of the children. *See Iowa Dept. of Human Services ex rel. Gonzales v. Gable,* 474 N.W.2d 581 (Iowa App.1991). Notwithstanding, the interest of the two children in this case was not at risk of being impaired from a practical standpoint, and there was no indication Brett would not adequately represent their concern. *See Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435 (7th Cir.1994). We recognize that necessity is not the test for intervention. *See State ex rel. Turner,* 186 N.W.2d at 147. However, we find the circumstances presented here tend to diminish the interest of the children sufficiently enough to justify denial of intervention. Furthermore, the circumstances indicate intervention would not be compatible with the purpose of Rule 75. Litigation would not be reduced by intervention, and Melissa's presence in the lawsuit as a party would have done little to assist in the efficient disposition of the case. The court did not act outside its discretion in denying the petition for intervention.

**AFFIRMED AS MODIFIED.**