# IN THE COURT OF APPEALS OF IOWA

No. 20-1011
Filed April 14, 2021


**AMBER FELDMAN,**
    Plaintiff-Appellee,

**vs.**

**CURTIS MITWEDE,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Wittig, Judge.


Curtis Mitwede appeals the order modifying his child support obligation. **AFFIRMED AS MODIFIED.**


Jeremy N. Gallagher of Kintzinger, Harmon, Konrardy, P.L.C., Dubuque, for appellant.

Myia E. Steines of Clemens, Walters, Conlon Runde & Hiatt, L.L.P., Dubuque, for appellee.

Thomas J. Miller, Attorney General, and Erin Cullen, Assistant Attorney General, for appellee State CSRU.


Considered by Bower, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Curtis Mitwede appeals the order modifying the amount of child support he provides for the two children he shares with Amber Feldman. The district court entered a decree addressing child support in 2017, incorporating the provisions of an agreement signed by Curtis and Amber. That agreement states that Curtis and Amber would share equally in the children's expenses, that "application of the Iowa Supreme Court Child Support Guidelines would be unjust or inappropriate," and that "no child support should be ordered."

When the court entered the original decree, Curtis was earning a salary of $42,062.00 at Big River Sign Company. But in October 2018, Curtis started a business doing similar work. His company's federal 2019 S corporation tax return shows he paid himself compensation of $10,385, and ordinary business income of $12,300. By February 2020, Curtis paid himself a bimonthly salary of $1153.85.

In September 2019, Amber contacted the Iowa Child Support Recovery Unit (CSRU) to request modification of Curtis's child support obligation. The CSRU served Curtis with a notice of its intent to modify his child support obligation. Based on a financial statement and pay stubs Curtis provided, the CSRU calculated the amount of support under the child support guidelines to be $269.00 per month for both children with a step-down to $212.00 per month for one child. Believing that Curtis "[wa]sn't being fully honest with his income," Amber requested a court hearing in regard to his child support obligation. The order setting a hearing required Curtis to provide updated financial information, including his 2017, 2018, and 2019 tax returns. Based on the updated information, the CSRU recalculated

Curtis's gross monthly income to be $3334.37.[1]  The CSRU's updated child support guidelines worksheet shows Curtis should pay $671.00 per month of support for both children with a step-down to $492.00 per month for one child.

After the hearing, the district court entered an order modifying child support. The court found that Curtis "has been slightly dilatory in his contribution" to the children's expenses and that deviation from the child support guidelines is no longer appropriate.  In determining Curtis's gross monthly income, the court noted it was only able to see the final tax return Curtis filed and commented that Curtis, as sole business owner, "has the ability to manipulate his deductions to maximize his expenses and minimize his tax obligation."  The court went on, "If full deductions for the building depreciation, rents, and miscellaneous deductions are not permitted, he would earn approximately $7100.00 per month which would require a much higher support obligation."  After eliminating business deductions for rents, interest, depreciation, and "other" deductions, the court determined that Curtis earned $7017.75 per month.[2]  On this basis, the court calculated the amount of child support Curtis is obligated to pay under the child support guidelines and ordered Curtis to pay $1097.00 per month for two children and $702.96 per month for one child.

---

[1]  The CSRU arrived at this figure by adding Curtis's 2020 salary ($1153.85 × 2 = $2307.70) to the ordinary business income shown on the federal 2019 S Corporation tax return ($12,300.00 ÷ 12 = $1026.67).   $2307.70 + $1026.67 = $3334.37/month.

[2] From federal 2019 S Corporation tax return:  $165,025 less cost of goods sold = $104,664. Subtracting salaries of $4713, Advertising of $5948 and taxes of $9790 the total business income is $104,664 - $20,451 = $84,213.   $84,213 ÷ 12 = $7017.75/month.

We review orders modifying dissolution decrees de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). In doing so, we give weight to the trial court's fact-findings, especially those concerning witness credibility, though we are not bound by them. *See id.* "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *See id.* (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998)). We afford the district court "considerable latitude" in its determination "and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

Curtis challenges the court's finding regarding his earnings. We determine income "from the most reliable evidence presented." *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999). With regard to business income, we allow deductions for expenses reasonably necessary to maintaining the business. *See* Iowa R. Ct. 9.5(1)(c) ("Gross income from self-employment is self-employment gross income less reasonable business expenses."); *In re Marriage of Gaer*, 476 N.W.2d 324, 329 (Iowa 1991) ("[S]*ome* consideration must be given to business expenses reasonably necessary to maintain the business or occupation.") (Emphasis in original). The question is whether the deductions at issue here are for expenses reasonably necessary to maintain Curtis's business.[3]

---

[3] Curtis also claims that the court improperly based his income on a single year of earnings. Because he raises this issue for the first time on appeal, error is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

The only evidence in the record regarding Curtis's earnings consists of Curtis's tax returns for the years 2017 through 2019 and his three paystubs from early 2020. Curtis's most recent tax return shows his business had gross sales totaling $165,025.00. Gross profit was $104,664.00 after subtracting cost of goods sold. Curtis then deducted compensation of officers ($10,385), salaries and wages ($4713), rents ($12,000), taxes ($9790), interest ($1163), depreciation ($33,120), advertising ($5948), and other deductions ($15,225). So ordinary business income shows as $12,320. The district court's calculation of Curtis's earnings excluded the deductions for rents, interest, depreciation, and other deductions. It appears that the court disallowed the deduction for rents based on an erroneous belief that the business owns the building in which it is located,[4] but no evidence supports such a finding. And despite the court's assertion that Curtis has the ability to manipulate his deductions, there is no evidence showing he did so. We note that a professional prepared the return, and no party presented expert testimony or other evidence to show the deductions were unreasonably excessive. Without any evidence to support a finding that Curtis manipulated his tax returns to reduce his income for purposes of calculating his child support, we conclude the deductions were reasonably necessary to maintain the business. *See In re Marriage of Hansen*, 886 N.W.2d 868, 876-77 (Iowa Ct. App. 2016). Because the reliable evidence supports the CSRU's calculation of Curtis's income in the amount of

[4] The court found the building in which the business is located "is valued at over one-million dollars but depreciated on [Curtis]'s tax returns." But the corporate tax return shows Curtis depreciated only a Roland Printer that cost $19,000 and a 2011 Honda that cost $18,000.

$3334.37 per month, we modify the order to require Curtis to pay child support of $671.00 per month for both children and $492.00 per month for one child.[5]

Curtis next challenges the portion of the order requiring the parties to share expenses for show choir. The purpose of the child support guidelines is to "balance the needs of the children against the legitimate needs and expenses of the payor parent." *In re Marriage of Gordon*, 540 N.W.2d 289, 292 (Iowa 1995). Therefore, there is a presumption that the amount of support ordered under the guidelines is correct. *See id.* Because the guidelines include expenses for clothes, school supplies and recreation activities, the court cannot order additional support to cover any such expense unless it finds the amount of support provided under the guidelines would be unjust or inappropriate. *See id.* Although the court found show choir to be "an expense that is not normally incurred by other children of the same as the parties' daughter," the record is devoid of any evidence regarding this expense. Because there is no basis for overcoming the presumption in favor of the guidelines, we modify the order to remove the requirement that the parties' share equally in this expense.

---

[5] Although no party has addressed how any resulting overage in child support payments should be dealt with, our supreme court believes it is "within the power of an appellate court in such situations to provide for a reduction in the amount of future payments over a period of time required to exhaust any overplus resulting from the decision on appeal." *Thomas v. Minner*, 340 N.W.2d 285, 287 (Iowa 1983) (addressing the overpayment of spousal support after the obligation is reduced on appeal). In *State ex rel. Department of Human Services v. Cottrell*, 513 N.W.2d 765, 768-69 (Iowa 1994), our supreme court held in an analogous situation that "[a]ny overpayment made . . . in light of our modification of [the] monthly support obligation shall be applied to reduce the reimbursement amount." To avoid the costs of further district court litigation and another appeal, we encourage the parties to reach an agreement for a method allowing Curtis to recoup any overpayment of child support.

Curtis also challenges the court's refusal to modify the provisions of the decree ordering Amber to provide the children's health coverage. The legislature has established an order of priority when the CSRU enters or seeks an order for medical support. *See* Iowa Code § 252E.1B(2). The first priority is given to a custodial parent who is currently providing coverage under a health benefit plan other than public coverage if the plan is accessible and the cost is reasonable. *See id.* § 252E.1B(2)(a). Because Amber provides coverage as set forth in section 232E.1B(2)(a), we affirm this provision.

Finally, both parties request an award of appellate attorney fees. This action was brought under Iowa Code chapter 252H, which does not authorize an award of attorney fees. *See* Iowa Code § 252H.5. Without statutory authority to award attorney fees, we deny any such award. *See Rea v. Iowa Dist. Ct. for Lee Cty.*, 877 N.W.2d 869, 871-72 (Iowa 2016) (noting the district court is without authority to award attorney fees in action arising under chapter 252H); *Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 182 (Iowa 2010) (stating that attorney fees are not allowed "in the absence of a statute or agreement expressly authorizing it" (citation omitted)).

**AFFIRMED AS MODIFIED.**