**In re the MARRIAGE OF Jane M. NELSON and Scott J. Nelson.**

**Upon the Petition of**

**Jane M. Nelson, Appellee,**

**And Concerning**

**Scott J. Nelson, Appellant.**

**No. 96–172.**

Supreme Court of Iowa.

Oct. 22, 1997.

Rehearing Denied Nov. 21, 1997.

Angela C. Simon and David L. Hammer of Hammer, Simon & Jensen, Dubuque, for appellant.

J.C. Salvo and Richard C. Schenck of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

We granted further review of a court of appeals decision which affirmed a trial court judgment modifying an order for child support payments. On our de novo review [1] we find only slight disagreement with the trial court decree which we affirm as modified.

Because we find no way to improve on the statement of facts in the court of appeals decision, we quote and adopt it as our own:

Respondent-appellant Scott J. Nelson appeals from a district court ruling modifying and increasing his child support obligations for two children from $425 per month to $695 per month. Scott contends the district court did not correctly calculate his income and that of his former wife, petitioner-appellee Jane M. Herbers. He further contends the district court was incorrect in finding a ten percent variance in what he paid and what the child support guidelines provided.... He also contends the trial court did not give adequate consideration to the net worth of the parties. He complains Jane should not have been awarded attorney fees. Scott requests appellate fees....

Jane and Scott, married in 1984, are parents to two children: Reann, born May 30, 1983, and Jessica, born July 12, 1985. Their marriage was dissolved in September 1989. At that time, Scott was a law student. The parties agreed his completion of law school would be a substantial change in circumstances justifying a review of child support. The original decree ordered Scott to pay $137.50 per month per child in child support. In March 1993, Jane filed a modification action requesting an increase in Scott's child support payments. Jane had remarried. The district court increased Scott's child support payments for both children to a total of $425 per month.

On August 30, 1995, Jane filed a second modification action seeking an increase in child support payments. At trial, Jane offered evidence Scott's income had increased from $15,000 per year in 1991 to $38,524 in 1994. Jane testified her second husband is a farmer, but that she worked part-time at the Manning hospital earning $5.20 per hour as a cook. She has two children from her second marriage. Scott argued that excluding the bonus he received in 1994 his net annual income increased only $408 from what he earned in 1993. He also argued Jane and her new husband's net worth had increased $70,000 since 1992 while his had stayed the same. The district court found Scott's income had increased and accordingly increased his child support obligations to $695 per month.

■ I. Iowa courts now have several years' experience with child support guidelines, which seem to have gone far in fulfilling their intent and purpose. *See In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991) (guidelines intended to remedy inadequate, inconsistent, and ineffective case-by-case approach in setting support). In applying the guidelines, net monthly income of both custodial and noncustodial parents must first be deduced. *Id.*

■ All income that is not anomalous, uncertain, or speculative should be included when determining a party's child support obligations. *In re Marriage of Brown,* 487 N.W.2d 331, 333 (Iowa 1992); *In re Marriage of Russell,* 511 N.W.2d 890, 893 (Iowa App.1993). When deciding whether bonuses are to be included in gross income, we examine the employment history of the payor over the past several years to determine whether the amount of money paid from year to year was consistent. If so the bonuses should be included in gross income. *Russell,* 511 N.W.2d at 893.

■ We think the district court correctly calculated Scott's annual gross income to be $31,525, based on his 1994 income (the last year for which the district court had complete figures). The figure excludes a $7000 bonus Scott received that year for performing legal work for a partner who was sick.

---

1. Our review is de novo. Iowa R.App. P. 4.

We think, although Jane disagrees, the $7000 reflected income not likely to recur. The $31,525 did correctly include $1365 Scott received that year as a regular Christmas bonus. Although Scott complains that the 1994 Christmas bonus was not typical—and exceeded the norm—we agree with the trial court's finding. Both the exclusion and the inclusion were correct.

II. Scott argues the district court erred when it did not consider the payment of $181.43 he is making monthly to provide his two children with health insurance. He contends this amount should be added to the $425 he is paying in child support; thus his total support obligation would be $606 per month—which he considers to be well within the "spirit" of the child support guidelines. Scott alternatively claims the health insurance payments should be subtracted from his annual gross income before calculating his child support payments.

■ Scott is wrong in contending for a $181.43 deduction from support payments owed, but correct in contending for a reduction of that amount as a part of calculating his annual net income for guideline purposes. *See State ex rel. Dep't of Human Servs. v. Burt*, 469 N.W.2d 669, 671 (Iowa 1991) (deducting forty-five dollars from monthly gross income for dependent health insurance that court ordered father to pay); *In re Marriage of Golay*, 495 N.W.2d 123, 127 (Iowa App. 1992) (same). Therefore an additional $2172 ($181 × 12) should be subtracted from Scott's gross income before computing his child support payments. So Scott's monthly net income is $1846 rather than $2027.

■ III. Scott contends that $417, his monthly payments necessary for retiring his law school loan, should also be deducted in calculating his monthly net income for guideline purposes. Scott cites no authority, and we find none, to support this claim. Indebtedness payments are not to be deducted from a parent's income when calculating child support payments. *See* Iowa Child Support Guidelines (July 1, 1995). The district court correctly so ruled. In a later division we consider Scott's analogous contention that his law school loan payments constitute a special

circumstance demanding departure from the guidelines.

IV. Scott contends it was inequitable to use Jane's actual earnings—rather than her earning capacity—in computing her gross income. He points to her full-time employment during her first marriage to disparage her choice to work only part-time during her present marriage.

■ When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines. *State ex rel. Dep't of Human Servs. v. Cottrell*, 513 N.W.2d 765, 768 (Iowa 1994); *State ex rel. Lara v. Lara*, 495 N.W.2d 719, 721–22 (Iowa 1993). Before using earning capacity rather than actual earnings a court must however make a determination that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child and to do justice between the parties. *See In re Marriage of Bergfeld*, 465 N.W.2d 865, 870 (Iowa 1991); *In re Marriage of Flattery*, 537 N.W.2d 801, 803 (Iowa App.1995). We examine the employment history, present earnings, and reasons for failing to work a regular work week when assessing whether to use the earning capacity of a parent. *Iowa Dep't of Human Servs. ex rel. Gonzales v. Gable*, 474 N.W.2d 581, 583 (Iowa App.1991).

■ We agree with the district court's holding that Jane's income should not be calculated on a full-time basis. As a mother of four, it was eminently reasonable for her to choose to spend half of her working hours parenting the children, including the two from the parties' marriage. The case is similar to *In re Marriage of Salmon*, 519 N.W.2d 94, 97 (Iowa App.1994) (income of mother of four, including two from parties' marriage, calculated on part-time basis). *See also In re Marriage of Bonnette*, 492 N.W.2d 717, 721 (Iowa App.1992) (earning capacity of full-time mother not calculated) (citing *In re Marriage of Beeh*, 214 N.W.2d 170, 174 (Iowa 1974)). Jane's income was correctly computed.

V. The district court rejected Scott's contention that the calculations should recognize the $70,000 increase in the net worth of Jane and her present husband since the 1993 modification order. The claimed net worth increase can only be ascribed to Jane's husband's farming operation. Scott would assign half of the $70,000 to Jane because she and her husband filed joint income tax returns.

■ We can pass any reservation concerning how much of the increase should be assigned to Jane because the trial court ruling was clearly correct on the basis of the rule explained in *In re Marriage of Cossel*, 487 N.W.2d 679 (Iowa App.1992). In *Cossel* a noncustodial parent (a self-employed farmer) experienced an increased net worth during a three-year period following dissolution of his marriage. The increases were primarily the result of increases in grain and livestock prices. *Cossel*, 487 N.W.2d at 682. In declining to use the parent's net worth as a substitution for income, the court stated:

> We do not find a departure from the guidelines justified where a farmer with modest assets realizes an increase in net worth because of a market price increase in farm commodities that have not been sold. Farm commodities are subject to a number of nonpredictable market fluctuations. Even the most experienced farmers are not able to predict the grain and livestock markets.... We do not interpret the child support guidelines to require the courts to trace increases and decreases in the value of farm commodities. The value of farm commodities is best established when the commodity is sold. The value of farm commodities is therefore reflected in income, and income is used to establish child support. We look at Gary's income, not his net worth, in fixing child support.

*Id.*

Net worth for guideline purposes cannot be pegged to the shifting values of farm commodities.

■ VI. Jane's present motion to modify was grounded on a claim of substantial change in circumstances under Iowa Code section 598.21(9) (1995). A centerpiece of Scott's appeal is a claim that there has been no such change. The statute provides that "a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines." Iowa Code § 598.21(9). Scott's contention rests on two premises: (1) the trial judge should not be permitted to substitute his discretionary judgment for the judge who in 1993 approved the deviation proposed by the parties and found it appropriate; and (2) using the correct figures of net income for both parties, the variations of the amount that would be due is less than ten percent. *See In re Marriage of Bolick*, 539 N.W.2d 357, 359–60 (Iowa 1995) (res judicata doctrine prevents the second court from revisiting wisdom of earlier award because of alleged ten percent deviation from what could be due under a new calculation).

Scott's contention fails on its first premise. The 1993 modification order, by reason of its lack of stated reasons for varying from the guidelines, cannot serve as the beginning or base figure in calculating a ten percent variation. Although the 1993 modification court did not so indicate, the $425 monthly support fixed by the stipulation was well below the correct amount called for by the guidelines in effect at that time. *See* Iowa Child Support Guidelines (Dec. 31, 1990).[2] Neither did the 1993 modification court state any reasons for a deviation. We have many times said that

> [w]hen a court sets child support in an amount different from that required by the guidelines, the law requires "a record or written finding, *based on stated reasons*, that the guidelines would be unjust or inappropriate as determined under the criteria prescribed by the supreme court."

---

**2.** The 1993 modification did not state Scott's net monthly income. Documents filed by Scott in the district court file indicate he made $28,568 in 1992. Taking the requisite deductions (including $2172 for medical insurance), Scott's net monthly income was approximately $1596. Jane did not work during this period, and therefore had no income. Based on the child support guidelines in effect in 1992, Scott was obligated to pay $594. This figure is computed by multiplying $1596 × 37.2%.

*In re Marriage of Guyer,* 522 N.W.2d 818, 820 n.1 (Iowa 1994) (quoting Iowa Code § 598.21(4)(a) (1993)); *see also State ex rel. Nielsen v. Nielsen,* 521 N.W.2d 735, 737 (Iowa 1994).

The absence of a specific finding that a deviation from the guideline is necessary may justify a reversal of a decree. In *In re Marriage of Hornung,* 480 N.W.2d 91, 94 (Iowa App.1991), the court of appeals reviewed a trial court's decision to depart from the guidelines. The trial court only noted the parties' incomes and stated that variation from the guidelines was necessary in order to enable respondent to "clarify his debt picture." *Hornung,* 480 N.W.2d at 94. The court of appeals held this did not constitute a written finding under Code section 598.21(4)(a). *Id.; see also In re Marriage of Mayfield,* 477 N.W.2d 859, 862 (Iowa App. 1991) (remanded to trial court because order departing from the guidelines gave no reason for the deviation and there was no proper explanation for the disparity between the calculation under the guidelines and those of the trial court). These cases were not based on a stipulation as the present case is, but this factor does not alter the analysis. *Guyer,* 522 N.W.2d at 820 (parties' stipulation did not obviate guideline requirements).

Because the 1993 modification order failed to comply with the guidelines, and because the variance was unexplained, it cannot serve in calculating the ten percent variance under Iowa Code section 598.21(9). We must look back for a beginning date to the most recent order that did comply. Thus the ten percent calculation must be made by comparing the present circumstances with those at the time of the dissolution decree. That variation easily qualifies as more than the required ten percent.

VII. We affirm the trial court's order that Scott pay $500 toward Jane's attorney fees at trial in district court. We reject Jane's request that Scott be ordered to pay for her attorney fees on appeal and deny as well Scott's request that Jane pay for any of his attorney fees. We deny Scott's request that his support payments be paid into a conservatorship.

VIII. When justice clearly demands it, the guidelines provide for a modicum of flexibility. Special circumstances can call for an adjustment up or down when necessary to do justice between the parties. *State ex rel. Nicholson v. Toftee,* 494 N.W.2d 694, 695 (Iowa 1993). Any request for variation should however be viewed with great caution. It must be remembered that impetus for the guidelines came from the federal and state legislatures and the amounts were fixed only after exhaustive study of suggestions invited from all known public and private interests. *Powell,* 474 N.W.2d at 533. The guidelines must therefore be respected as carefully considered social determinations. Iowa Code § 598.21(4)(a) (guidelines must be strictly followed unless application would be unjust or inappropriate); *State ex rel. Reaves v. Kappmeyer,* 514 N.W.2d 101, 104 (Iowa 1994) (rebuttable presumption that child support should be fixed in accordance with guidelines).

Scott nevertheless contends the special circumstances of this case qualify for a deviation from the guidelines and that the trial court's failure to adjust his obligation downward was error. He claims the modification order, which requires him to pay $695 per month, leaves him seven percent of his net income to cover his own living expenses, therefore impoverishing him and causing an undue financial burden. He argues his law school loan payments—totaling $417 per month—constitute a special circumstance. He relies on the point we made in *Nicholson* in which we deviated from the guidelines and reduced the amount of the award due to special circumstances. *Nicholson,* 494 N.W.2d at 698; *see also Reaves,* 514 N.W.2d at 105 (downward adjustment necessary to achieve fairness and prevent substantial injustice to noncustodial father who could not meet monthly expenses of present child support obligation).

Scott submitted a financial affidavit in November 1995. He listed his net income at $1950 and his total monthly expenses at $2150. Scott's expenses were calculated using the prior child support payments of $425, but did not list the $181 he pays in health insurance to his children. Considering the

1995 modification, Scott's monthly expenses equal $2358 with only $1846 in monthly net income. He does make car payments of $358 a month for a vehicle he needs in his work. He lives modestly and it would be very difficult to decrease his expenses.

There is nothing startling or even unusual about Scott's bleak financial position. It is typical of the financial dilemmas routinely presented in domestic court disputes. With very rare exceptions, involving persons of affluence, child support payments are more than the obligor can readily afford—and much less than reasonably needed for the child or children involved. The guidelines were drafted with full appreciation of this dismal reality and specify the priorities to be considered in fixing support orders. In yielding to the guidelines, we are not insensitive to the difficult financial bind in which Scott is placed. But yield we must.

Retirement of indebtedness is expressly made a lower priority than the needs of children. Iowa Child Support Guidelines (July 1, 1995). In common with many persons obliged to pay child support payments, Scott faces most of all a burdensome indebtedness. In Scott's case two obligations—for student loans ($417.34 per month) and car payments ($358.60 per month)—represent $775.94 of the $2150.94 he lists as monthly expenses. It was obviously reasonable—and perhaps to the children's eventual benefit—for Scott to complete his legal education. Jane subscribed to the plan by agreeing to reduced support while he finished his studies, though she did not agree to reduced support during all the years it takes to retire the student loans. For a ten-year period this would amount to more than half of the usual child support period. Notwithstanding Scott's financial bind, the guidelines clearly and expressly render the reduction of debt a priority status inferior to the needs of his children. The guidelines presuppose that debts can be refinanced, but that childhood cannot be postponed.

IX. In summary the court was incorrect in not deducting $2172 from Scott's annual gross income for health insurance he provides for his children; therefore his monthly net income is calculated at $1846. The dis-

trict court was correct in not using Jane's earning capacity; her income was correctly computed at $6760. Under current guidelines Scott's monthly child support payment should be $633. The judgment of the trial court will be modified to so provide. As thus modified the judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT MODIFIED AND AFFIRMED.**