In the Matter of Louis A. McLAIN, Debtor.

Julie Sue Scholl, Plaintiff,

v.

Louis A. McLain, Defendant.

Nos. 98–05303–CJ, 99–99029.

United States Bankruptcy Court, S.D. Iowa.

July 27, 1999.

**604**

Gary R. Hassel, Des Moines, Iowa, for debtor.

Julie Sue School, plaintiff pro se.

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Bankruptcy Judge.

Pro Se Plaintiff and Creditor Julie Sue Scholl (Plaintiff) filed a complaint against Defendant and Chapter 7 Debtor Louis A. McLain (Debtor). Plaintiff asks the Court to find $3,843.96 nondischargeable pursuant to 11 U.S.C. § 523(a)(5). She contends the debt stems from a reduction in child support she accepted in return for Debt-

or's agreement to pay her 36 installments of $230.64 that she, in turn, would use to pay off certain marital debts.

Debtor maintains the debt is a dischargeable property settlement. He does not contest that the $1,000.00 in back child support, appearing on Schedule E (Creditors Holding Unsecured Priority Claims), and his ongoing child support obligations are nondischargeable. Indeed, he has included back child support and ongoing child support on Schedule J (Current Expenditures Of Individual Debtor).

On June 4, 1999 Plaintiff presented her case-in-chief.[1] Then Debtor's attorney moved for a directed verdict. The Court denied the motion on the record. Then Debtor presented his case-in-chief. Having reviewed the testimony and exhibits and having considered the arguments of the parties, the Court now enters its decision.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the standing order of reference entered by the U.S. District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

Plaintiff, born November 11, 1964, and Debtor, born May 5, 1961, were married on October 6, 1990. They have two children, Luke Austin, born April 23, 1991, and Jacob Sawyer, born August 8, 1994.

Sometime in early 1996, Plaintiff commenced an action in the Iowa District Court for Adair County to dissolve her six year marriage to Debtor. In her answer to Debtor's Interrogatory 8, she indicated dissatisfaction with Debtor's indecisiveness over employment opportunities. (Exhibit 4, pp. 5 and 5A.) Her testimony echoed that concern.

On April 29, 1996 Plaintiff filed an Affidavit of Financial Status in the state court

---

1. During the May 4, 1999 pretrial conference, the Court urged Plaintiff to obtain legal counsel to represent her in this matter. Plaintiff indicated she wished to proceed pro se.

proceeding. (Exhibit 5.) She did not request child support, temporary alimony or temporary attorney fees in the space provided on that form affidavit.

Under the "Assets" category, Plaintiff reported the parties jointly owned a 1984 Olds Cierra worth $2,000.00, household items worth $2,000.00, and both term life insurance and a bank account of unspecified values. She also indicated Debtor owned a 1986 Cavalier Wagon worth $2,000.00. She represented there were no encumbrances against any of the assets.

Under the "Other Debts" category, Plaintiff listed "Credit Cards" in the amount of $10,000.00, "Constant Credit" in the amount of $1,500.00, "Doctor" in the amount of $250.00, and "Lewis (repossessed truck)" in the amount of $2,000.00. Those debts totaled $13,750.00.

Under personal expenses, Plaintiff listed her monthly expenses as follows: $425.00 for house payment or rent, $380.00 for day care, $30.00 for doctor, $60.00 for constant credit, and $300.00 for other credit cards. Those expenses totaled $1,195.00.

In the area provided for incomes, Plaintiff reported her monthly gross income as $1,125.00 and her net income as $939.00. She estimated Debtor's monthly gross income as $2,000.00 and his net income as $1,670.00.

In his answer to Plaintiff's Interrogatory No. 7, Debtor stated his bimonthly gross income was $1,075.00 and bimonthly net income was $855.94. (Exhibit 3, p. 10.) In answer to Interrogatory No. 12, Debtor indicated he received a GED in 1980, attended junior college for three semesters, and has been employed as a copier service technician over the years. (Exhibit 3, p. 14.) He signed his answers to interrogatories on September 14, 1996.

In her answer to Debtor's Interrogatory No. 2, Plaintiff stated she was a high school graduate and had extensive computer experience and secretarial skills. (Exhibit 4, p. 2.) She listed the employment she held at various times throughout the marriage in her answer to Debtor's Interrogatory No. 4. (Exhibit 4, p. 3.) Exhibit 4 does not bear Plaintiff's signature.

On October 7, 1996 Plaintiff and Debtor filed a Stipulation in the dissolution proceeding. (Exhibit 2.) He signed the document on October 4, 1996. She signed on the date it was filed. Among other things, the parties agreed that neither would receive alimony now or in the future. Each would take his or her own property free and clear of any claims of the other. Each would be liable for certain debts and hold the other harmless, as follows:

Debtor

| | |
|---|---|
| (a) Five by Eighty Country Club | $70.00 |
| (b) Farmer's Electric Corp. | $140.24 |
| (c) City of Menlo | $32.51 |
| (d) Pelgas | $154.92 |
| (e) Swiss Colony | $244.00 |
| (f) Forsyth Pediatrics | $220.00 |
| (g) Coon Valley Telephone | $140.00 |
| (h) Rhodes (½) | $191.00 |
| **TOTAL** | **$1,192.67** |

Plaintiff

| | |
|---|---|
| (a) Morrison Chevrolet (Stuart) | $186.00 |
| (b) Rhodes (½) | $191.00 |
| **TOTAL** | **$377.00** |

(Exhibit 2, pp. 4–5 and 6.)[2] They also agreed to share court costs equally.

With respect to the circumstances surrounding the debt in issue, Plaintiff and Debtor consented to joint legal custody of the minor children. Plaintiff would have primary physical care and custody. Debtor would have reasonable visitation rights and would be responsible for all transportation for visitation. (Exhibit 2, pp. 1–2.) Each would claim one child as a dependent for tax purposes. (Exhibit 2, p. 3.)

The Stipulation then provided that Debtor would pay $425.00 per month for the support of the minor children. He would

2. Neither Plaintiff's complaint nor her presentation of the evidence addressed the debts on which Debtor was to hold her harmless. Debts (a), (b), (d) and (g) or portions of those debts appear to be included on Debtor's Schedule F (Creditors Holding Unsecured Nonpriority Claims) as items 2, 9, 16 and 7, respectively.

make the payments through the Adair County Clerk of Court or through the Collection Service Center in Des Moines, Iowa. Debtor would be required to make those payments until the children completed high school or reached eighteen, whichever occurred later, or upon the children marrying, entering the armed services or otherwise becoming emancipated in the interim. There was also a provision for continuing support for further education. (Exhibit 2, pp. 2–3.)

According to Exhibit 6, the Iowa Child Support Guidelines in effect at the time of the dissolution, Debtor should have paid between $512.60 and $525.55 per month.[3] The Stipulation simply noted the amount of child support was less than what would be required under the relevant Child Support Guidelines for the reasons set forth in Paragraphs 10 and 12 of the that document. (Exhibit 2, p. 3.) Those paragraphs read as follows:

> Paragraph 10: Louis and Julie shall be liable in the amount set forth below for the following debts in the approximate amounts listed:

| | |
|---|---|
| (a) Merchants Bank | $153.55 |
| (b) Choice VISA | $2,083.04 |
| (c) Advanta | $2,610.00 |
| (d) ATT Universal Card | $1,534.00 |
| (e) Mastercard | $980.00 |
| (f) BB & T | $1,750.00 |
| (g) MBNA | $1,900.00 |
| TOTAL | $11,010.59 |

> Louis shall pay $230.64 per month to Julie, by wage assignment, for his share of the above-listed debts beginning October 15, 1996 and continuing thereafter on the 15th day of each succeeding month until the 15th day of September, 1999 at which time his obligation shall

cease and Julie shall be fully responsible for any unpaid balances on the above debts. Louis agrees to notify his current employer of this arrangement as well as any subsequent employer and provide for the wage assignment effective October 15, 1996. If Louis fails to pay this amount, Julie shall have a judgment against Louis for $7,200.00 plus interest at the rate of 9.5% per annum beginning October 15, 1996, less credit for any payments made. As long as Louis makes his monthly payment of $230.64, Julie shall be responsible for paying the above creditors and shall hold Louis harmless from any further liability thereon. This obligation from Louis to Julie shall be considered a nondischargeable support obligation under 11 U.S.C. § 523(A)(5).

> . . .

> Paragraph 12: Louis shall maintain health insurance coverage on the minor children of the parties, and Louis shall pay ½ of the uncovered medical costs, including dental and optical costs. Again, Louis' obligation to maintain health insurance and pay ½ of the uncovered medical costs and ½ of the dental and optical costs is an integral part of this Court Order concerning child support. These obligations as well as the child support obligation of $425.00 per month should be considered nondischargeable child support obligations under 11 U.S.C. § 523(A)(5).

(Exhibit 2, pp. 5 and 6.)[4]

The dissolution proceeding came on for hearing in the Iowa District Court for

---

3. Text accompanying the relevant Iowa Child Support Guidelines explained: "To determine the monthly child support payments, multiply the non-custodial parent's net monthly income at the point where it intersects the custodial parent's net monthly income by the percentage shown on the chart." (Exhibit 6, p. 3.) In this case, the percentage multiple was 30.7% because the Debtor was the non-custodial parent and his net income was between $1,001.00 and $2,000.00 and the Plaintiff was the custodial parent and her net monthly income was between $901.00 and

$1,000.00. If Debtor's net monthly income was $1,670.00, the amount indicated on the Affidavit of Financial Status, the Debtor would owe $512.69 ($1,670.00 × .307); if it was $1,711.88, the amount indicated in Debtor's Answers to Interrogatories, he would owe $525.55 ($1,711.88 × .307).

4. The Paragraph 10 debt appears as item 19 on Debtor's Schedule F.

With respect to Paragraph 12, the Debtor testified that he has maintained the health

Adair County on the date the Stipulation was filed. Plaintiff appeared with her attorney, James W. Mailander. Neither Debtor nor his attorney, Mr. Jungmann, appeared. On cross-examination, Plaintiff testified the Stipulation had been negotiated by the attorneys and the state court did not conduct an evidentiary hearing.

In the Decree of Dissolution, signed October 21, 1996 and entered some time in November 1996, the state court indicated it "reviewed and accepted and incorporated" the Stipulation into the Decree. (Exhibit 1, p. 2, Finding of Fact No. 9). Indeed, the remainder of the Decree appears to track almost verbatim the provisions of the Stipulation—without elaboration. The Decree bears the signatures of the attorneys of record, evidencing their approval as to form and content.

From November 6, 1996 to December 7, 1998, Debtor made a number of payments toward his Paragraph 10 obligation. Those payments totaled $4,459.00. (Exhibit 7.) Based on the 9.5% amortized schedule included in the Stipulation, he still owed Plaintiff $3,843.96 as of December 9, 1998, the date he filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. (Exhibit 2, p. 8.)

Meanwhile, on October 15, 1996, Plaintiff signed a promissory note at 7% interest to pay $7,000.00 to her parents, Harold and Phyllis Scholl, for funds advanced for personal expense. (Exhibit 9.) Apparently those funds were advanced in two installments—$5,000.00 on October 15, 1996 and $2,000.00 on December 8, 1996. (Exhibit 9.) Then on December 10, 1996, Plaintiff applied for and received a loan from Security State Bank in the principal amount of $4,605.00. (Exhibit 8.)

Plaintiff testified that she incurred the October 15, 1996 and December 10, 1996 loans to protect her credit history. She apparently began making small payments on many of the Paragraph 10 debts soon

after the Affidavit of Financial Status was filed and then made some very large payments on those debts on October 15, 1996 and in December of 1996. (Exhibit 10.) With the exception of approximately $500.00 owed Choice VISA and $725.00 owed BB & T, Plaintiff had paid off all the Paragraph 10 debt by the beginning of 1997.

On March 10, 1999 the Court granted Debtor a general discharge of his debts.

### APPLICABLE LAW

11 U.S.C. § 523(a)(5) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

. . .

11 U.S.C. § 523(a)(5).

The Plaintiff has the burden of proving by a preponderance of the evidence that the debt is nondischargeable. *See Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 659 112 L.Ed.2d 755 (1991); *First Nat. Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 608 (8th Cir.1997). Al-

---

insurance coverage and·that he has paid half of the uncovered medical costs. Though Schedule F contains some medical debts, the

record does not suggest those are related to medical care for his children.

though statutory exceptions to discharge are construed narrowly, exceptions for spousal and child support are interpreted liberally. *In re Kline*, 65 F.3d 749, 750–51 (8th Cir.1995).

■■■ In the often quoted case of *In re Williams*, 703 F.2d 1055, 1056–57 (8th Cir. 1983), the Eighth Circuit Court of Appeals explains why resolution of a dischargeability issue grounded in a dissolution setting is not a simple matter:

> The Bankruptcy Reform Act of 1978 prohibits the discharge of a debtor's obligation to make alimony, maintenance, or support payments to his or her former spouse....Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law....Debts payable to third persons can be viewed as maintenance or support obligations;[5] the crucial issue is the function the award was intended to serve....Though we of course regard the decisions of the state courts with deference, bankruptcy courts are not bound by state laws that define an item as maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement.

*Id.* (citations omitted).

■■■ Since intent is rarely easy to discern, a court may consider a variety of factors in determining the nature of the obligation is issue. *See In re Coffman*, 52 B.R. 667, 674–75 (Bankr.D.Md.1985) (setting forth 18 factors).[6] A court does not

---

5. Recognizing that divorcing spouses sometimes agree to make payments of marital debts and to hold their soon to be former spouses harmless from those debts in exchange for a reduction in alimony, maintenance or support, Congress enacted 11 U.S.C. § 523(a)(15) in 1994. That section provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> ...
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;
> ...

11 U.S.C. § 523(a)(15).
Pursuant to 11 U.S.C. § 523(c) and Federal Rule of Bankruptcy Procedure 4007(c), a section 523(a)(15) action must be commenced not later than 60 days following the first date set for the section 341 meeting unless a request for more time, filed before the 60 days expires, is granted.

6. The *Coffman* factors include:

> 1. Whether there was an alimony award entered by the state court.
> 2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.
> 3. The intention of the court to provide support.
> 4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.
> 5. The age, health, work skills, and educational levels of the parties.
> 6. Whether the payments are made periodically over an extended period or in a lump sum.
> 7. The existence of a legal or moral "obligation" to pay alimony or support.
> 8. The express terms of the debt characterization under state law.
> 9. Whether the obligation is enforceable by contempt.
> 10. The duration of the marriage.
> 11. The financial resources of each spouse, including income from employment or elsewhere.
> 12. Whether the payment was fashioned in order to balance disparate incomes of the parties.

look to the grand total of factors in each party's favor and decide accordingly; rather, the court employs the factors to discern the function the award was intended to serve. *In re Ellis,* 149 B.R. 927, 931 (Bankr.E.D.Mo.1993), *rev'd on other grounds,* 72 F.3d 628 (8th Cir.1995). Finally, the focus is on the parties' situation at the time of the dissolution proceeding, not at the time the bankruptcy petition was filed. *See Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986) (per curiam); *Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984) (per curiam).

## DISCUSSION

■ Plaintiff has not met her burden of proving by a preponderance of the evidence that the remaining obligation of $3,843.96 under Paragraph 10 of the Stipulation, that was incorporated into the Dissolution Decree, is nondischargeable child support.

The intent of the state court is unknown. The Plaintiff did not offer the record of the October 7, 1996 hearing into evidence. The Dissolution Decree simply incorporates the parties' Stipulation without elaboration. Yet, there was a serious deviation from the Iowa Child Support Guidelines.[7] Plaintiff was entitled to $87.69 ($512.69 − $425.00) or $100.55 ($525.55 − $425.00)

more dollars per month for 5–year old Luke and 2–year old Jacob.[8]

Allegedly in lieu of the extra child support, the Stipulation and Dissolution Decree resulted in the Debtor being expected to pay the Plaintiff either $142.95 ($425.00 + $230.64 − $512.69) or $130.09 ($425.00 + $230.64 − $525.55) more per month than he was required to pay under the guidelines. Yet, the Debtor was to pay $230.64 for only 36 months. Neither the Stipulation nor the Dissolution Decree provided that the $425.00 in child support would be adjusted thereafter. Absent either extraordinary or unfortunate events in the children's lives, the Stipulation and Dissolution Decree actually result in a substantial shortfall in child support over time.[9]

The mutual intent of the parties at the time of the dissolution is not clear. The dissolution attorneys negotiated the Stipulation. Plaintiff seemingly participated in the process. Debtor did not do so to any meaningful extent. Plaintiff has been very consistent and adamant in her representation to this Court that the amount in issue represents waived child support. Debtor included $655.64 ($425.00 + $230.64) in ongoing child support in Schedule J (Current Expenditures Of Individual Debtor) but then proceeded to contest the nature of the $230.64 obligation in his answer to the complaint and at trial.[10] Hence the

13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.
14. Whether there were minor children in the care of the creditor spouse.
15. The standard of living of the parties during their marriage.
16. The circumstances contributing to the estrangement of the parties.
17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.
18. Tax treatment of the payment by the debtor spouse.
*In re Coffman,* 52 B.R., 667, 674–75 (Bankr. D.Md.1985).

7. A record or written finding is required when a dissolution decree departs from the child support guidelines. *In re Marriage of Nelson,* 570 N.W.2d 103, 107 (Iowa 1997).

The parties' stipulation does not satisfy the requirement. *Id.* at 108 (citing *In re Marriage of Guyer,* 522 N.W.2d 818, 820 (Iowa 1994)).

8. Whether the net monthly income set forth in the Affidavit of Financial Status or in the Debtor's answer to Plaintiff's Interrogatory 7 took into account a deduction for the health insurance coverage required by Paragraph 12 of the Dissolution Decree is not clear. *Nelson,* 570 N.W.2d at 106.

9. Any amounts Debtor expends to maintain health insurance coverage for the children is not a credit toward child support due under the Child Support Guidelines. *Id.*

10. Plaintiff did not question the Debtor about the information he provided on Schedule J. She did ask him to admit that he agreed to be

Court must consider the remaining *Coffman* factors.

Plaintiff apparently decided to end the six year marriage, at least in part, because she could no longer tolerate what she considered to be Debtor's indecisive and erratic behavior regarding employment options. The record does not shed much light on the parties' standard of living during their marriage. From the assets and debts listed in the Affidavit of Financial Status and recited in the Stipulation and Dissolution Decree, the Court concludes they enjoyed a modest lifestyle, albeit one saddled with debt.

The record indicates Debtor's income exceeded Plaintiff's income at the time of the dissolution. The Dissolution Decree, however, provided that neither party would receive alimony from the other—ever. Moreover, neither the Stipulation nor the Dissolution Decree made any reference to the financial situation of either party. The record indicates their ages and educational levels are fairly close. Both have marketable job skills. Hence, the Court does not conclude the Paragraph 10 obligation was meant to equalize the financial situations of the parties.[11]

In Iowa there is a legal obligation to pay child support to the custodial parent, and such obligation is enforceable by contempt. According to the Stipulation and the Dissolution Decree, however, the obligation in issue only bore a label of "nondischargeable support obligation." It was not part of the detailed child support provisions found in Paragraph 4 of the Stipulation or in the relevant portion of the Dissolution

Decree. Paragraph 10 did not provide that the Debtor's obligation would terminate upon events similar to those set forth in Paragraph 4. Rather, the obligation to pay $230.64 per month for only 36 months would terminate on September 15, 1999. Regarding any failure to pay, Paragraph 10 indicated the Plaintiff would have a judgment against Defendant for $7,200.00 plus interest at the rate of 9.5% per annum beginning October 15, 1996, less credit for any payments made.

The obligation in issue was payable directly to the Plaintiff, rather than through the Clerk of Court or Collection Service Center as required for the Paragraph 4 child support obligation. The Paragraph 10 obligation really stemmed from marital debt owed third parties. The Debtor agreed to pay $8,303.04 ($230.66 × 36) against the $11,010.59 liability.[12] Though Paragraph 10 does not contain explicit "hold harmless" language, it does appear between Paragraph 9, that identifies debts for which Debtor will hold Plaintiff harmless, and Paragraph 11, that identifies debts for which Plaintiff will hold Debtor harmless.

Yes, based on the Child Support Guidelines, the amount set forth in Paragraph 4 was inadequate. However, if the Paragraph 10 obligation was meant to be in the nature of child support, that meant overpayment in child support for 36 months. On the other hand, the deficiency in child support for future years went unexplained in the Stipulation and the Dissolution Decree. In other words, Paragraph 10 did nothing to address that deficiency.

---

bound to the obligations set forth in Paragraphs 10 and 12 in return for a reduction in child support. He disagreed. During questioning by the Plaintiff and later by his attorney, the Debtor indicated he was not sure how the dollar amounts were calculated. The Court found his testimony credible and his confusion over the dollar amounts understandable.

**11.** Without taking into consideration more than the parties' net monthly income levels at the time of the dissolution and the adjustment

for the $425.00 child support payment, the parties resulting net monthly incomes would be close. For the Plaintiff: $939.00 + $425.00 = $1,364.00. For the Debtor: $1,670.00 − $425.00 = $1,245.00 or $1,711.88 − $425.00 = $1,286.88.

**12.** The actual percentage of the debt Debtor was assuming was within Plaintiff's control. That is, she was the party actually paying off the debts listed in Paragraph 10.

Indeed, had child support in Paragraph 4 been set at $512.69 per month for the 36 months covered by Paragraph 10, the Debtor would have been required to pay an additional $3,156.84 ($87.69 × 36) in child support. Had child support been set at $525.55, the difference would have been $3,619.8 ($100.55 × 36). In any event, Debtor has paid Plaintiff $4,459.00 of the Paragraph 10 obligation. The record is silent regarding how he treated any portion of those payments on his 1996, 1997 and 1998 tax returns.

The record, viewed as a whole, does not support a finding that the $3,843.96 obligation is nondischargeable child support. The record, viewed as a whole, does support a finding that the $3,843.96 obligation is a dischargeable property settlement.

### CONCLUSION

WHEREFORE, the Court finds:

(1) The Plaintiff has not met her burden of proving by a preponderance of the evidence that the obligation in issue is in the nature of alimony, maintenance or support as contemplated by Congress in enacting 11 U.S.C. § 523(a)(5); and therefore,

(2) The $3,843.96 obligation is covered by the General Discharge of Debt entered in the Chapter 7 case on March 10, 1999.

A separate Order dismissing this adversary proceeding shall be entered accordingly.