## IN THE COURT OF APPEALS OF IOWA

No. 18-1834
Filed July 3, 2019

IN RE THE MARRIAGE OF VICTORIA DUGAN
AND JAMES DUGAN

Upon the Petition of
**VICTORIA DUGAN,**
    Petitioner-Appellant,

**And Concerning
JAMES DUGAN,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Fayette County, Richard D. Stochl,
Judge.

Victoria Dugan appeals the child custody and support provisions of the
decree dissolving her marriage to James Dugan. **AFFIRMED.**

Dana DeSimone of Miller, Pearson, Gloe, Burns, Beatty & Parrish P.L.C.,
Decorah, for appellant.

James Dugan, Sumner, pro se appellee.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Victoria Dugan appeals the child custody and support provisions of the decree dissolving her marriage to James Dugan. She seeks physical care of the children. In the alternative, she asks for modification of the visitation and child-support provisions of the decree. She also seeks an award of spousal support and her appellate attorney fees.

Because the district court hears dissolution-of-marriage proceedings in equity, our review is de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *see also* Iowa Code § 598.3 (2017); Iowa R. App. P. 6.907. Although we examine the entire record and adjudicate the issues anew, we give weight to the district court's factual findings, especially with respect to the credibility of the witnesses. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013); *see also* Iowa R. App. P. 6.904(3)(g). This is because the district court, in making its credibility assessment, has the distinct advantage of listening and observing each witness's demeanor firsthand, while we must rely on a cold transcript. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

The parties married in 2001 and have six children together, ranging in age from eight to sixteen years old. Victoria also has two younger children who are not at issue in this action. In October 2017, after James moved to Kentucky, Victoria filed a petition to dissolve the marriage.

On February 26, 2018, the district court entered a temporary custody order based on the parties' agreement to place their four daughters in James's physical care while their two sons would be in Victoria's physical care. Two weeks later,

Victoria traveled to Kentucky, removed the children from James's care, and brought the children to Iowa. She alleged she did so because James's girlfriend informed her that he was using alcohol and methamphetamine. However, a sample James provided for testing on March 13 was negative for the screened drugs. From March 2018 until the time of trial in June, Victoria only allowed James to contact the children via telephone or video chat.

In May 2018, James moved back to Iowa. On May 8, without James's knowledge, Victoria withdrew the children from the school they had been attending in order to move to Wisconsin with Michael Stover, her boyfriend of two months. She and Stover share a three-bedroom home with Victoria's eight children and Stover's two children. At some point, Victoria also blocked James from contacting the children by phone or Internet.

The parties appeared pro se at the June 2018 trial. In addition to testimony from Victoria and James, the court heard testimony from Victoria's mother and father and from James's mother.

The court entered the decree dissolving the parties' marriage in August 2018. It granted James physical care of the children with Victoria receiving visitation on alternating weekends in addition to a one-week visit each month in June, July, and August. The court ordered Victoria to pay James $210 per month of child support and granted James tax credits for all six children.

**I. Physical Care and Visitation.**

In determining physical care and visitation, the court is to "assure the child the opportunity for maximum continuing and emotional contact with both parents" to the extent reasonable and in the child's best interests. Iowa Code

§ 598.41(1)(a); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) (stating the custodial factors in section 598.41(3) apply equally to physical care determinations). The overriding consideration is the child's best interest. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). The court is guided by the factors set forth in Iowa Code section 598.41(3), as well as those identified in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). "[T]he courts must examine each case based on the unique facts and circumstances presented to arrive at the best decision." *Hansen*, 733 N.W.2d. at 700.

In determining physical care, the court observed:

James is the more stable of the two parents and is capable of meeting the[ children's] needs. Victoria does not work and has not worked throughout the marriage. She kept the children from James for an extended period of time against court orders. Her own family questions her ability to care for four children. She has not demonstrated a pattern of stability. She unilaterally removed the children from James's care in Kentucky after agreeing to have them placed in his care just several weeks before. She removed them from school with several weeks remaining in the semester to move out of state to live with her boyfriend. Her home in Iowa was described as being very poorly maintained.

James has a checkered path. He has a history of drug use and criminal behavior. However, he is drug free and in a stable relationship. He lives with his mother, who is available and willing to provide him assistance in caring for the children. It is in the best interest of the six children to be in his primary care.

Although Victoria argues that granting James physical care of the children is contrary to their best interests, we concur with the district court's assessment of the evidence. Victoria's actions of withdrawing the children from school before the end of the semester, moving out of state and away from a support system, and refusing to inform James of her actions or allow him contact show her disregard for the children's best interests in addition to the court's orders.

Victoria argues the court held her to a higher standard with regard to her actions post-separation, noting the court was critical of her decision to move out of state with the children when James also moved out of state for a period.  She ignores the fact that she was not only aware James had moved but agreed to place four of their children in his care before removing them to Iowa in violation of the court's temporary custody order.  Although she claims she was motivated to do so based on allegations of James's alcohol and drug use, the record does not disclose evidence to support these allegations.[1]  Moreover, Victoria had means of redress through the court and failed to pursue them.[2]  In contrast, Victoria did not consult with James or inform him of the move to Wisconsin, which was undertaken in contravention of the court's order.  We also reject Victoria's claim that the district court violated her due process rights based on what she perceives to be a variance in the court's treatment of her and James.

Victoria complains the court failed to appoint a guardian ad litem or attorney to represent the children.  Such a decision is discretionary.  *See In re Marriage of Teepe*, 271 N.W.2d 740, 744 (Iowa 1978).  Regardless, Victoria fails to direct us to where in the record she preserved the issue by making such a request.  *See* Iowa R. App. P.  6.903(2)(g)(1) (requiring the appellant's brief to include a

---

[1] Victoria argues, "The sole drug test James alleges proves his lack of drug use, filed as an exhibit in the case, was filed April 30th, 2018, long after the time the girls were with James in Kentucky.  The report lacks foundation, doesn't even appear to have tested for methamphetamines."  We note that the test results show the date the tested specimen was collected was March 13, 2018.  Although there is not a separate testing category for methamphetamine, James tested negative for amphetamines.

[2] Victoria claims she "is faulted for not acting within the divorce case in bring[ing] the children back home, but James is not held to the same standard."  We reject her attempt to equate her act of violating the court order by removing the children from Kentucky with James's failure to seek enforcement of the order following her violation.

"statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided"). Although the court may appoint a guardian ad litem to represent the children sua sponte under Iowa Code section 598.12(1), in order to preserve a claim for appellate review, "we require that the nature of any alleged error be timely brought to the attention of the district court." *Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 695 (Iowa 2013). Victoria's failure to request appointment of a guardian ad litem waives any error. *See Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 390 (Iowa 2012) ("A litigant cannot sit on a claim of error until the trial is over and make the claim once the result of the trial is unsatisfactory."); *Schmitt v. Koehring Cranes, Inc.*, 798 N.W.2d 491, 499-500 (Iowa Ct. App. 2011) ("To preserve error for appellate review, a party must alert the district court to the issue at a time when the district court can take corrective action.").

Victoria also complains the visitation provisions of the decree are contrary to the children's best interests. She seeks visitation for the entirety of the summer break from school except for the week prior to the start of the new school year. Upon our de novo review, we find the summer visitation set forth in the decree is in the children's best interests and decline to modify it.

**II. Child Support.**

Victoria next contends the district court erred in calculating the amount of her child support. The district court found that Victoria has no disabilities and is capable of working but chooses not to, and it imputed income to her of $7.50 per hour for forty hours per week. She contends the court erred in imputing this income to her.

"When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines." *In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997). The court may impute income to a party based on that party's earning capacity upon finding "that a parent is voluntarily unemployed or underemployed without just cause." Iowa Ct. R. 9.11(4). However, our rules require that in order to calculate child support based on a parent's earning capacity rather than actual earnings, the court must make a written determination that "if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties." *Id.*

The district court failed to make the requisite finding that substantial injustice would occur if Victoria's earning capacity was not used to compute her child support obligation. We are able to make such a finding on our de novo review, however. The child support calculation uses James's earnings from full-time employment. Although Victoria was unemployed during much of the marriage and at the time of trial, she no longer has custody of eight children. She is capable of working and the evidence at trial indicates she sought work at times. It is equitable to impute earnings to Victoria in order to support the six children she shares with James for whom she no longer provides physical care. In order to do justice between the parties, it is reasonable to impute income based on full-time work at a rate of $7.50 per hour. On this basis, we affirm the district court's child support calculation. Additionally, under the record presented, we find the trial court's order

entitling James to claim all six children as dependents on his tax returns to be equitable.

**III. Spousal Support.**

Victoria asks for an award of rehabilitative spousal support. This form of spousal support is available for support of an economically dependent spouse through a limited period of re-education or retraining in order to allow that spouse to become self-supporting. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Victoria requests an award of $300 per month until the youngest child reaches the age of sixteen years old.

In determining whether to award spousal support, the court considers the factors set out in Iowa Code section 598.21A(1). These factors include the length of the marriage, each party's age and health, the distribution of property, each party's education, the earning capacity of the party seeking maintenance, and the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1). Because we accord the trial court considerable latitude in determining matters of spousal support, we will disturb such an award only when there has been a failure to do equity. *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

We decline to award Victoria spousal support on the record before us.

**IV. Appellate Attorney Fees.**

Finally, Victoria requests an award of her appellate attorney fees. Such an award is not a matter of right but rest within our discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider "the needs of the party

seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

We decline to award Victoria appellate attorney fees.

**AFFIRMED.**