# IN THE COURT OF APPEALS OF IOWA

No. 24-0229
Filed December 4, 2024

IN RE THE MARRIAGE OF RAVEN T. MUELLER
AND CRAIG E. MUELLER

Upon the Petition of
**RAVEN T. MUELLER, n/k/a RAVEN T. KENNICKER,**
        Petitioner-Appellee,

**And Concerning**
**CRAIG E. MUELLER,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi
Ackley, Judge.

A father appeals an order modifying his child support obligation. **ORDER**
**VACATED AND REMANDED WITH INSTRUCTIONS.**

Jamie A. Splinter of Splinter Law Office, Dubuque, for appellant.

McKenzie R. Blau of O'Connor & Thomas, P.C., Dubuque, for appellee.

Brenna Bird, Attorney General, and Erin Cullen and Gary Otting, Assistant
Attorneys General, for appellee Child Support Services.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

Craig Mueller appeals a district court order modifying his child-support obligation from $55 to $377 per month under Iowa Code chapter 252H (2024). He contends that he did not receive a fair hearing and the court's computation is not supported by the record. Both parents ask for appellate attorney fees. After reviewing the record, we agree that the hearing was incomplete and the calculations are inaccurate.[1] We thus vacate the modification order and remand for the court to recalculate Craig's child-support obligation after a new hearing. But we decline to award attorney fees to either parent. *See* Iowa Code § 252H.5.

**I.     Facts and Prior Proceedings**

After sixteen years of marriage, Craig Mueller and Raven Kennicker divorced in December 2020. Under a parenting plan accepted by the court, Craig and Raven agreed to joint physical care of their daughter, L.A.M., born in 2014. Craig also agreed to pay $55 per month in child support, as provided in the Iowa Child Support Guidelines.[2] About two years later, the Child Support Recovery Unit (now known as Child Support Services (CSS)) undertook enforcement of Craig's obligation.[3] In October 2023, at Raven's request, CSS filed its notice of intent to review and adjust Craig's obligation. Craig asked to be heard on the proposed

---

[1] Our review is de novo. *See In re Marriage of Legg*, No. 16-0307, 2006 WL 3802163, at *1 (Iowa Ct. App. Dec. 28, 2006).

[2] In 2020, Raven earned $58,000 and Craig earned $67,084 annually.

[3] The legislature changed the name of the Child Support Recovery Unit to Child Support Services. *See* Iowa Code § 252B.2 (2023); 2023 Acts 2023 ch. 19, § 844 (effective July 1, 2023). Because these proceedings took place after the effective date, we will refer to the unit by its new name.

modification. In response, CSS certified the matter to the district court for an original hearing. *See* Iowa Code §§ 252H.3(3), 252H.8(8).

The district court set that hearing for November 2023. But once the parties gathered, the court decided the slotted thirty minutes wasn't enough time to consider Craig's exhibits.[4] So the court reset the hearing for January 2024. Before the January hearing, CSS filed worksheets—based on the parents' 2023 incomes—calculating Craig's obligation at $615 per month and Raven's obligation at $484 per month. Considering their "equally shared physical care," CSS determined that Craig owed the offset amount of $131 per month.

At the January hearing, neither parent agreed with CSS's proposed amount. Raven asked the court to average Craig's salary for 2022 and 2023, rather than relying on his 2023 earnings alone. Craig countered that his salary of $101,000 in 2022 was "an aberration" and asked the court to determine his income by averaging his earnings for the last five years leaving out 2022.[5] The court then engaged in a lengthy back-and-forth with Craig's counsel about the financial documents provided and what they revealed about his income.

After that exchange, Craig took the stand. His counsel asked a few questions about the pay stubs offered as exhibits. The court interjected to say that

---

[4] Craig filed seventeen proposed exhibits, some before the November hearing and some before the January hearing. Although the court did not admit those exhibits into the record, it mentioned information from them in its order.

[5] CSS's brief states that Craig's proposed exhibits showed that he earned $73,187 in 2019; $71,960 in 2020; either $76,824 (per his pay stub) or $111,374 (per his tax return) in 2021; either $101,641 (per his pay stub) or $101,845 (per his tax return) in 2022; and $78,238 in 2024. None of Craig's exhibits are in our appeal record.

he did not need to testify about the documents that CSS used for its calculations. From there, the court directed Craig's testimony, stating:

> Sir, can you please tell the court why it is that your income should not be $101,000.00? That's kind of what I'm waiting to hear, and I'm not getting that. I have another proceeding, so I want to make sure we get moving on this, and we're not here all afternoon. What happened in 2022?

Craig explained that from April to August 2022 his employer, John Deere, raised his pay scale from $24 to $38 dollars per hour because he was specially assigned to work on a product that was leaving the company. He was also temporarily allowed to work Saturdays, and his accrued vacation pay stayed at the elevated rate for some time after the assignment ended. In answer to a question from the court, Craig said that it is very rare that a product leaves Deere's distribution: "Usually we gain products."

The court then suggested the parents agree on a support amount going forward and discussed its calculations with the attorneys for Craig, Raven, and CSS.[6] Amid that discussion, Craig told the court that he didn't understand its proposal: "I'm kind of lost on it." When the court asked if everyone agreed, Craig's counsel objected: "I can't even advise my client on this. You're asking me to sit here and explain all of this to him, and you're trying to explain to him, and in an open courtroom." The court then took a recess so counsel could talk to her client. When the proceedings resumed, the attorneys reported that Craig was unwilling

---

[6] The court proposed a child-support modification retroactive to a period before CSS filed the modification action. Counsel for CSS clarified that the modification could only be retroactive from three months after Craig was served notice. The court responded that "this is an agreement, it's different than an actual ruling on the application."

to accept the court's proposal. The court responded: "All right. Then I'll take the numbers as they were established for the 2023 calculation and enter the order. You can appeal this decision." The court then ended the hearing without admitting Craig's proposed exhibits, allowing Craig to complete his testimony, or allowing Raven to take the stand.

One week later, the court increased Craig's child support obligation to $377 per month. The court used three-year averages for both parents' incomes.[7] CSS moved to amend, asking that child support guidelines worksheets be filed with the modified support order. It also asked the court to address uncovered medical expenses. On February 1, the court filed an amended order, changing the start date for the new obligation, including an accrued support judgment, addressing uncovered medical expenses, and attaching a child support guidelines worksheet. Before CSS could challenge that worksheet, Craig appealed, depriving the district court of jurisdiction to correct any errors.

---

[7] The court noted that Raven's income was $51,095.00 in 2021; $52,729.00 in 2022; and $61,932 in 2023—for a three-year average of $55,252. For Craig's income, the court used the amounts reported on his tax returns, which were $111,374.00 for 2021; $101,845.00 for 2022; and $78,240 for 2023, to arrive at an average of $97,229.

In its brief, CSS mentions that the 2021 tax return for $111,374 includes Craig's wages of $76,922 from his W-2 and $32,802 from a pension or annuity, yet the district court took the higher number to calculate his average salary. CSS states, "Because the questioning of Craig was limited, no one was able to ask him about this pension or annuity income in 2021." But given that 2021 is an even bigger outlier in Craig's earnings history than 2022 and drives the average up, further explanation of this figure can be developed on remand.

## II.    Analysis

### A.  Recalculation of Child Support

Craig contends that the district court denied him a fair hearing and its findings and conclusions were not supported by the record or Iowa law.  He recounts the court's intervention in the proceedings—cutting him off, refusing to let his attorney present his testimony based on the proposed exhibits, and attempting to broker its own settlement.  He also contends that the district court "ignored well established law" in deciding how to calculate his income for purposes of the child support guidelines.  In his estimation: "The entire hearing was completely unfair."  As his remedy, Craig asks us to vacate the court's order and remand for a hearing on the merits, "preferably before a different judicial officer."

Raven defends the court's ruling.  First, she rebuts the claim that Craig had no chance to be heard, noting that he was "on the witness stand for nearly half of the eighty-minute hearing."  Second, she maintains that, "based on the evidence presented, it was reasonable for the district court to average the last three years of the parties' incomes to determine gross income."

For its part, CSS agrees with Craig's position that the court incorrectly calculated his child-support obligation.  It notes that the court based its modified child-support amount on a guidelines worksheet listing Raven as custodial parent and Craig as noncustodial parent.  CSS believes that the district court "likely ran two child support guidelines worksheets, one allowing Craig to claim the child [as a tax deduction] and one allowing Raven to claim the child, and then averaged the two outcomes to reach the modified support amount."  But "[o]nly one child support guidelines worksheet was filed, not a shared care worksheet, and nothing on the

filed child support guidelines worksheet indicates which parent got the tax benefit of the child." CSS then explains that under the guidelines, courts are to calculate support in joint physical care cases by using the grid for "Joint (Equally Shared) Physical Care Method of Child Support Computation." *See* Iowa Ct. R. 9.14(3).[8] As its bottom line, CSS urges that child support be recalculated under rule 9.14(3) rather than rule 9.14(2).

We agree with CSS that the error in calculating Craig's child-support obligation requires correction. But how? Questions linger about whether the district court was correct in using a three-year average to determine each party's income and whether the court afforded Craig a fair hearing before making that determination. Returning to CSS's appellate argument, it reminds us that gross monthly income means "reasonably expected income from all sources." Iowa Ct. R. 9.5(1). When deciding child-support obligations, courts should include all income that is "not anomalous, uncertain, or speculative." *In re Marriage of Nelson*, 570 N.W.2d 103, 105 (Iowa 1997). If the court ordering child support does not reasonably expect a parent to receive extra income again, then the court

---

[8] That joint physical care method includes two steps that differ from a standard calculation. First, the method multiplies the basic primary care amount by one and one-half for each parent to reflect the costs of two residences. Iowa Ct. R. 9.14(3) (grid line F). Second, the method multiplies that result by one-half to align with the equal percentage of time the child spends with each parent. *Id.* (grid line G). The computation then subtracts the smaller amount from the larger amount to determine the offset payment owed. *Id.* (grid line K); *see In re Marriage of McDermott,* 827 N.W.2d 671, 684 (Iowa 2013) (noting that this offset method for calculating child support "reflects the difference between joint physical care and other parental arrangements").

should exclude that income as an anomaly.[9]  *Markey v. Carney*, 795 N.W.2d 13, 19 (Iowa 2005).

Our ability to determine the parents' incomes is hindered by the abrupt end of the modification hearing.  In this circumstance, it is necessary to vacate the child support order and remand to the district court for a new hearing.[10]  *See In re Marriage of Meier*, 267 N.W.2d 46, 47 (Iowa 1978) ("We deem the record made in the trial court to be inadequate to enable us to decide this case anew.").

### B. Appellate Attorney Fees

Finally, both sides ask for appellate attorney fees.  But this action arose under Iowa Code chapter 252H, which does not authorize an award of attorney fees.  *See* Iowa Code § 252H.5.  Without statutory authority, we deny any award of attorney fees.  *See Rea v. Iowa Dist. Ct.*, 877 N.W.2d 869, 871–72 (Iowa 2016) (noting district court was without authority to award attorney fees in action arising under chapter 252H); *Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 182 (Iowa 2010) (stating that attorney fees are not allowed "in the absence of a statute or agreement expressly authorizing it" (citation omitted)).

### III.    Conclusion

Finding error in the calculation of child support and a need to revisit the evidence, we vacate the modification order.  We also remand for a new hearing

---

[9] In CSS's view, if Craig's 2022 income is included, then his yearly earnings fluctuate and should be averaged.  But if Craig's 2022 income is excluded as an anomaly, "his income from the other years does not meet the definition of fluctuating income and should not be averaged."

[10] CSS does not object to a remand "given the oddities of the hearing and to allow the court to recalculate child support using a shared care guidelines worksheet."

before a different judge.  *See Meier*, 267 N.W.2d at 47−48; *McGee v. McGee*, No. 19-1507, 2020 WL 4514693, at *2 (Iowa Ct. App. Aug. 5, 2020).

**ORDER VACATED AND REMANDED WITH INSTRUCTIONS.**